360 P.2d 994

**NATIONAL TRAILER CONVOY, INC.,**
Plaintiff-Appellant,

v.

**EMPLOYMENT SECURITY AGENCY OF
IDAHO, Defendant-Respondent.**

No. 8944.

Supreme Court of Idaho.

April 5, 1961.

Elam & Burke, Boise, for appellant.

Frank Benson, Atty. Gen., and Frank Langley and Jedd G. Owens, Asst. Attys. Gen., for respondent.

John W. Gunn, Boise, for respondent Employment Security Agency.

McQUADE, Justice.

This is an appeal from an order of the Industrial Accident Board, holding plaintiff must pay Employment Security contributions for certain of its haulers.

National Trailer Convoy, Inc., is a corporation having its principal place of business in Tulsa, Oklahoma. It is in the business of transporting new trailer houses and privately owned trailers to all points in the United States. One of its termini is in Boise, Idaho.

The corporation employs drivers to operate its own trucks; the status of those drivers is not in dispute.

Pursuant to a written agreement, the other drivers, with whom we are here concerned, operate their own trucks, delivering trailer houses for plaintiff corporation. Payment to the operators covers both the owner-operators' services and use of the equipment.

An examiner for defendant Employment Security Agency determined, on the basis of a report furnished by plaintiff, that the agent managing the Boise terminal and the truck owner-operators in Idaho were employees rather than independent contractors. He also ruled that the corporation was required to make Employment Security contributions on the basis of the agent's commissions. As for the operators, the examiner ruled:

" * * * drivers who are paid on a mileage basis would have to be considered as employees hired with equipment. A reasonable percentage of the amounts paid to your drivers may be allocated to equipment hire; however,

the amount reported as taxable wages can not be less than the prevailing wage for a similar type of work."

This ruling resulted in a hearing by an appeals examiner for the Agency, who also found both the agent and the owner-operators were employees.

On appeal to the Industrial Accident Board, the corporation waived formal hearing, and submitted the matter to the Board on the record transmitted from the Agency. The Board ruled the agent was an independent contractor, and the operators were employees of the corporation.

The corporation appeals from the order insofar as it affects the operators.

The pertinent facts with regard to the operators' status, brought out at the agency hearing, are these:

The agreement between the corporation and the individual owner-operators is set forth in a written contract. The operator owns and insures his truck. He may hire competent drivers to operate the equipment. When other drivers are hired, the owner-operator must pay all applicable Workmen's Compensation and employer's liability insurance. However, nearly all of the operators with whom we are concerned own only one truck each and drive the trucks themselves. This is the present practice of the corporation. The truck must conform to the standards of the Interstate Commerce Commission. The owner provides all insurance except on the cargo. All maintenance expenses, including gasoline, oil, tires, and repairs, are paid by the owner of the vehicle.

The company maintains a bulletin board at each terminal listing the operators who are available. A haul is offered first to the driver at the top of the list; if he declines, his name may be dropped to the bottom of the list.

When an operator accepts a haul, he chooses his own route and arrival time. After he has delivered a trailer, he may at his discretion return home, report to another company terminal for service, or attend to personal affairs.

An operator may transfer from one terminal to another at his discretion. He reports at his convenience. Operators sometimes will not report for two or three weeks. One operator did not report for two months; the relationship was then terminated by mutual agreement.

The owner may use his truck for other purposes as long as such uses do not compete with National Trailer Convoy. However, the vehicles are designed to haul trailers. Some operators use their trucks as second passenger cars.

The company carries insurance on cargo in transit. In case of loss, the operator indemnifies the company for the first $100. If subsequent investigation by the company shows the driver was not at fault, he is

reimbursed. The company requires that the operator carry a policy with a $2,000 medical provision for his own protection.

Maximum hours for drivers are set by the Interstate Commerce Commission. Operators must conform with these and other safety requirements of the I.C.C. They must make trip reports, and have their trucks checked every 30 days. The company maintains road patrols which may rule a driver off the road if his driving is not satisfactory.

The agreement may be terminated by either party. However, if the operator terminates before he has made 25 trips, he forfeits a $50 indemnity.

Compensation for each trailer movement is based on mileage and the weight and size of the trailer. The operator knows before he accepts a haul what the compensation will be. The operator determines where his truck shall be kept. He chooses his own routes and the stopping places en route. The operator may be required to collect for the haul.

Each truck carries a permanent decal identifying it as a National Trailer Convoy vehicle, in conformance with regulations of the Interstate Commerce Commission.

Introduced in evidence was a 1954 decision of the National Labor Relations Board (99 N.L.R.B. 1019) finding the owners operating trucks for plaintiff corporation were independent contractors within the meaning of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. Also introduced were the contract and the indemnity agreement between the corporation and the operators.

Plaintiff's assignments raise the question of error committed by the Board in finding that the relation of principal and independent contractor did not exist between plaintiff and its owner-operators involved herein.

■ The question whether a relationship is one of employer-employee or of principal-independent contractor is one which must be determined from all the facts and circumstances of the individual case. Merrill v. Duffy Reed Construction Co., 82 Idaho 410, 353 P.2d 657.

For purposes of the Employment Security Law, Idaho applies the common law test. I.C. § 72–1316(d) provides:

"Services performed by an individual only as an employee shall be covered employment, but there shall not be included in said covered employment, nor shall such term employee include, (1) any individual who, under the usual common-law rules applicable in determining the employer-employee relationship, has the status of an independent contractor or (2) any individual (except an officer of a corporation) who is not an employee under such common-law rules."

It is to be noted Idaho formerly applied a broader definition of "employee," giving a liberal construction to the Employment Security Law. See In re Pacific Nat. Life Assur. Co., 70 Idaho 98, 212 P.2d 397. The present statutory definition was adopted in 1949.

Rules for determining whether one is a servant or an independent contractor are set out in 56 C.J.S. Master and Servant § 3(2), pp. 45–47:

" * * * an 'independent contractor' is generally defined as one who in rendering services exercises an independent employment or occupation and represents his employer only as to the results of his work and not as to the means whereby it is to be done, and the question whether one is a servant or an independent contractor has been considered in many cases, and various tests have been applied in determining it. It has frequently been stated that it is impossible to lay down any hard and fast rule to determine whether a particular relationship is one of master and servant or contractee and independent contractor, and that each case must be determined on its own facts. Among the factors to be considered are whether the contractor is carrying on an independent business; whether the work is part of the employer's general business; the nature and extent of the work; the skill required; the term and duration of the relationship; the right to assign the performance of the work to another; the power to terminate the relationship; the existence of a contract for the performance of a specified piece of work; the control and supervision of the work; the employer's powers and duties with respect to the hiring, firing, and payment of the contractor's servants; the control of the premises; the duty to supply the premises, tools, appliances, material, and labor; and the mode, manner, and terms of payment. Ordinarily no one feature of the relationship is determinative, and all are to be taken into consideration in determining whether or not a person is an independent contractor."

█ A primary element in making this determination is the right of control: i. e., if one engages another to perform certain work, retaining control of the conduct of the person thus engaged with respect to the work to be done, as to the order, method, plan, and details of the work, the relationship is that of master and servant, and not of contractee and independent contractor. 35 Am.Jur., Master and Servant, sec. 5, p. 448; Taylor v. Blackwell Lumber Co., 37 Idaho 707, 218 P. 356; Chapin Co. v. Scott, 44 Idaho 566, 260 P. 172; Joslin v. Idaho Times Publishing Co., 56 Idaho 242, 53 P.2d 323; In re Pacific Nat. Life Assur. Co., 70 Idaho 98, 212 P.2d 397;

Nixon v. Webber-Riley Lumber Co., 71 Idaho 238, 229 P.2d 997; Merrill v. Duffy Reed Construction Co., 82 Idaho 410, 353 P.2d 657.

Requirements that truck and driver meet Interstate Commerce Commission standards, and existence of the road patrols, point toward compliance with governmental regulations, and are not indicia of an employer-employee relationship. The driver's control of his route, of the garaging and upkeep of his truck, his privilege of refusing a haul, all indicate the status of an independent contractor.

██ The right to hire subordinates is an indication of contractor status. People ex rel. Heartburg v. Interstate Eng. & Const. Co., 58 Idaho 457, 75 P.2d 997; In re General Electric Co., 66 Idaho 91, 156 P.2d 190.

██ Ownership of major items of equipment is a mark of the independent contractor. See Joslin v. Idaho Times Publishing Co., 56 Idaho 242, at page 258, 53 P.2d 323.

██ Another characteristic of the employer-employee relationship is the right of either party to terminate the relation without liability. In re Pacific Nat. Life Assur. Co., supra; Taylor v. Blackwell Lumber Co., 37 Idaho 707, 218 P.2d 356; Blue Bell Co. v. E.S.A., 75 Idaho 279, 270 P.2d 1054; Joslin v. Idaho Times Publishing Co., supra. The right exists herein, subject to the indemnity agreement with regard to the driver's first 25 trips.

"The mode of payment is an element to be considered in determining whether the relationship is that of master and servant or that of contractee and independent contractor in a doubtful case, but it is uniformly held that the mode of payment is not conclusive nor the decisive test as to the nature of the relationship and inferences derived from the mode of payment as to the nature of the relationship must yield to evidence that the person was working under general employment having no dominion or control over the premises and subject at all times to the orders of the employer as to when and how he should work and how it was to be accomplished. Payment for a result or by the job is an indicia that the relationship is one of contractee and independent contractor, whereas payment for the performance of work indicates a master-servant relationship." 56 C.J.S. Master and Servant, § 3(8), pp. 58–59.

██ We conclude that the arrangement as portrayed by the contract and the evidence does not effectuate an employer-employee status.

The order is reversed.

Costs to appellant.

TAYLOR, C. J., and SMITH, KNUDSON and McFADDEN, JJ., concur.