367 P.2d 291

Carl C. MOORE and/or Allied Mutual Funds, Inc., Plaintiff-Appellant,

v.

IDAHO EMPLOYMENT SECURITY AGENCY, Defendant-Respondent.

No. 8996.

Supreme Court of Idaho.

Dec. 18, 1961.

Eli Rapaich, Lewiston, for appellant.

**1**

John W. Gunn, Boise, Legal Counsel for Employment Security Agency.

McQUADE, Justice.

This appeal is taken from an order of the Industrial Accident Board which concluded from the uncontroverted facts of the case that as a matter of law agents of the corporation were employees and not independent contractors.

Allied Mutual Funds, Inc., which will be abbreviated herein as "AMFI," is a Washington corporation engaged in the business of selling shares in mutual funds. Being engaged in interstate commerce, AMFI is supervised by the Securities and Exchange Commission under federal laws and regulations.

Pursuant to federal laws and regulations, AMFI is required to be a member of the National Association of Security Dealers. Each broker or dealer, as a member of this association, must have each agent, employee, salesman, or other person handling money or securities of a patron or client registered as a representative of the association. AMFI is a member of the association, and requires its salesmen to be registered as representatives.

Although the corporation has an ambitious structural division for its operation, we are concerned with its organization under which it is currently operating.

In 1959, Carl C. Moore acquired all of the corporation stock except two shares, and became president. One of the shares is in the name of his wife, who was elected secretary-treasurer, and the other is held by Everett Kytonen, who is vice president. These three constitute the board of directors. Moore is now designated as division manager of the Lewiston, Idaho, division, under whom there is one active salesman.

At the time of the Industrial Accident Board hearing, no officer of the corporation was receiving a salary. Moore represented that all he could expect as a benefit from the corporation itself would be dividends on the common corporate stock. Commissions were received and distributed by the corporation according to a written agreement. A six per cent commission was received by AMFI on all consummated sales of shares in mutual funds. Subject to some modification, the division manager receives a four and one-half per cent commission on all sales he makes, and one per cent on all sales made by individual salesmen. A full-time salesman receives a three and one-half per cent commission on all sales which he makes. After these remunerations, the one and one-half per cent balance of the six per cent commission is used by the corporation for its

expenses. Any sum over expenses is subject to control of the directors. The relation between AMFI and its salesmen is defined in a written agreement. Pertinent portions of this agreement are as follows:

A. Basic agreement. The salesman agrees to act as a sales representative in a prescribed territory and to pursue this representation diligently.

B. Remuneration by commissions. The commission for sales is to be paid on the tenth and twenty-fifth of each month.

C. Limited authority. Under the agreement, the salesman has no authority to do any act not specifically authorized.

D. License fees and bond. The salesman pays $50 in consideration of his application for membership in the National Association of Security Dealers for his license and bond.

E. Agreement with distributor. A selling agreement which AMFI negotiates with the distributor of mutual fund shares is made a part of the AMFI sales agreement.

F. Company and governmental regulations. The salesmen and representatives must comply with the AMFI information manual, rules of the National Association of Security Dealers, rules and regulations of the S. E. C., applicable federal laws, and state regulatory statutes. The salesmen and representatives agree to make no representations other than those authorized by the listed mutual funds, by AMFI, and any other permissible representations.

G. Sales training program. To a slight degree, AMFI makes available a sales training program. This was represented by Moore to be largely for compliance with rules, regulations, and laws.

H. Sales information and supplies. AMFI supplies some sales material and provides lists of prospects, all without charge. Some sales assistance may be provided under certain circumstances.

I. Bookkeeping. All moneys collected are transmitted to AMFI, which keeps records of all sales and commissions.

J. Employment of others. The salesmen or representatives shall have no authority to employ others.

K. Termination of agreement. This agreement may be canceled by either party, and revocation is mandatory when a representative or salesman is in violation of any rules, regulations, or laws applicable to the conduct of AMFI's business.

Other than the assistance outlined in the sales agreement, no further aid is rendered to AMFI representatives or salesmen by way of stenographic aid, car expenses, advancements, office space, or other items. There is no regulation as to hours of employment, persons to be contacted, nor

quota of sales to be consummated within any given period. Customer accounts developed belong exclusively to the developing representative during the period of his employment with AMFI.

The Industrial Accident Board found that Carl C. Moore and the one salesman were employees of AMFI and not independent contractors.

There is no controverted issue of fact in the record, thus presenting the question as to whether the exhibits and testimony support the findings of the Industrial Accident Board that Carl C. Moore and the one salesman are employees of AMFI.

In determining the relationship between persons under our Employment Security Law, we apply the common law test. I.C. § 72–1316(d) provides:

"Services performed by an individual only as an employee shall be covered employment, but there shall not be included in said covered employment, nor shall such term employee include, (1) any individual who, under the usual common-law rules applicable in determining the employer-employee relationship, has the status of an independent contractor or (2) any individual (except an officer of a corporation) who is not an employee under such common-law rules."

This Court has recently had cases which considered factors in determining employer-employee relationship versus that of an independent contractor. An outstanding case is Merrill v. Duffy Reed Construction Co., 82 Idaho 410, 353 P.2d 657, 660. Therein it was said:

" 'An independent contractor * * is one who, in the course of an independent employment, undertakes to perform work subject to the control of the person for whom the work is done only as to the result or product of the work, and not as to the means or methods used.' [Citing authority.] 'The right of control by which the nature of the employment is tested is the right to control the work, the details of the work, the manner, method, or mode of doing it, the means by which it is to be accomplished, or, specifically, the details, manner, means, or method of doing the work, as contrasted with the result thereof.' [Citing authorities.] * * * "

A fine line of reasoning is not always afforded in the differentiation between the relationship of employer and employee as contrasted with that of a principal and an independent contractor. Factors to be considered in each case vary with the relationship which exists between the parties. Here we are to consider right to control, method of payment, payment of expenses, furnishing of materials and assistance, hours of employment, completion of work,

right to assign and direct work, termination of relationship, and responsibility for funds.

This Court has considered most of these factors in the cases of Fitzen v. Cream Top Dairy, 73 Idaho 210, 249 P.2d 806; Merrill v. Duffy Reed Construction Co., supra, and National Trailer Convoy, Inc. v. Employment Security Agency, 83 Idaho 247, 360 P.2d 994.

AMFI's right to control is primarily the exercise of supervision to assure compliance with applicable rules, regulations and statutes of those bodies which regulate and control the sale of securities for the asserted purpose of protecting the public. We stated in the National Trailer Convoy case that requirements of a truck driver to meet Interstate Commerce Commission standards and existence of road patrols point toward compliance with governmental regulations; and these are not indicia of an employer-employee relationship. AMFI is required to terminate the relationship if any of its representatives violates 'regulatory provisions which govern its business. A representative's license to sell is predicated upon his compliance therewith and it is understood to be axiomatic that loss of license terminates selling privileges.

A continuation of the relationship between AMFI and its representatives is independent of a sales production quota.

The salesman who is herein affected is part-time.

Either of the parties can terminate the relationship under given circumstances; however, it was held in the Duffy Reed case

"The right of discharge is not a decisive test of the relationship of either the employer-employee relationship or that of principal and independent contractor. * * *" [82 Idaho 410, 353 P.2d 660]

Method of payment does not disturb the independent contractor relationship. Here the method of payment for services performed is by agreed percentage of the dollar volume of sales. It is to be compared with piecework, although the payment is made semimonthly.

It was said in the Duffy Reed case that lack of control of a worker and his equipment constitutes a strong indication of the relationship of principal and independent contractor. There was no control of the salesman or Moore by AMFI, nor of their equipment. Moore and the salesman furnished at their own expense their transportation and any extra help which they needed. AMFI did not direct the hours of work nor the period of the day such work was carried on. Moore and the salesman had no responsibility for the funds which were paid by the patrons for stock, as these monies were paid over in

their entirety to AMFI, which forwarded the money for the stock transfer and at regular intervals paid the established commissions.

We conclude that the evidence as a matter of law establishes the relation of principal and independent contractor.

The order of the Board is reversed.

Costs to appellant.

TAYLOR, C. J., and SMITH, KNUDSON, and McFADDEN, JJ., concur.