388 P.2d 100

Otis BYRD, dba Modern Barber Shop,
Appellant,

v.

EMPLOYMENT SECURITY AGENCY,
Respondent.

No. 9291.

Supreme Court of Idaho.

Jan. 2, 1964.

Milton E. Zener, Pocatello, for appellant.

Franklin H. Powell, Boise, for respondent.

McQUADE, Justice.

Respondent, Idaho Employment Security Agency, is herein sometimes designated as the Agency, and the Industrial Accident Board as the Board.

The facts are uncontroverted. Otis Byrd has been a licensed barber since 1927 and has owned a barber shop as an individual or partner since that year. He has operated a barber shop at his present location for almost thirteen years. This shop houses three barber chairs. The shop is licensed to Byrd by the Idaho Department of Law Enforcement. Byrd provides janitorial services, laundry service, utilities, supplies, and all equipment for the shop except hand tools used by the individual barbers. It is customary in the barber trade for each barber to provide his own hand tools. The shop is operated during hours established by the barber's union in the area.

Robert J. McAteer has been a registered, licensed barber for seven years following the completion of an apprenticeship. He has been employed in Byrd's barber shop since he began working as a barber. He worked as an employee of Byrd until January 1, 1961. Byrd compensated him for his work at the rate of 80% of McAteer's gross receipts. At that time they came to an informal verbal agreement that McAteer would thereafter operate on an independent basis and compensate Byrd for the use of

the chair, equipment, supplies, janitorial service, and related right to operate in the shop at the rate of $16.50 per week. After that date, McAteer continued as he had before to furnish only his own hand tools. However, after that time he was free to come and go without requesting leave of Byrd; whereas formerly, he had necessarily requested Byrd's permission if he wished to take time off, had been subject to discharge by Byrd, and was expected to work during the regularly established shop hours. From the time that he began operating on the changed basis, McAteer kept his own change and his receipts separate from Byrd; whereas formerly, Byrd had complete control of the money. McAteer began paying his own social security tax and keeping records of his income; whereas previously Byrd had paid social security tax and unemployment insurance tax on McAteer's wages and provided him with industrial accident insurance. Byrd felt that he had no right to exercise supervision over McAteer's services after McAteer began operating on the changed basis; whereas Byrd had the right to exercise supervision over McAteer's work previously, although, as is customary in the barber trade, he had not, in fact, directed McAteer in the actual performance of the details of the services he rendered for customers after McAteer had completed his apprenticeship. The rental agreement between McAteer and Byrd was on a week-to-week basis with no provision for liability in the event that either terminated the agreement without notice.

Earl King has been a barber since about 1920. King arranged in 1961 to lease a chair in Byrd's barber shop. Because of health conditions and because he was engaged in another business on a part-time basis, he planned to work only as a part-time barber. Furthermore, he agreed to compensate Byrd for the use of the chair at the rate of 15% of his income from his barber business. As in the case of McAteer, Byrd furnished everything to King except for King's hand tools. King was free to work when he decided to do so. There was no provision for liability in the event that the lease was terminated by either party without notice, and, in fact, when King decided to leave the business, he merely informed Byrd that he was through leasing the chair.

The Board's order affirming the appeals examiner's decision that appellant must pay employment security tax is predicated upon I.C. § 72–1316(d) and I.C. § 54–501. Although I.C. § 72–1316(d) has subsequently been amended, Sess.Laws, 1963, p. 875, on the date of the Board's decision, the statute read as follows:

"(d) Services performed by an individual only as an employee shall be covered employment, but there shall not be included in said covered employ-

ment, nor shall such term employee include. (1) any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an independent contractor or (2) any individual (except an officer of a corporation) who is not an employee under such common law rules."

I.C. § 54–501 states:

* * *

"After July 1st, 1957, it shall be unlawful to own or operate a barber shop unless it is at all times under the direct supervision and management of a registered barber and unless a barber shop license is first obtained from the department of law enforcement for each barber shop owned and operated. The applicant for such license must furnish proof that the shop is located and equipped to meet the sanitary requirements of the department of public health. * * *"

The Board concluded that the above statute requires an owner or operator to secure a license and maintain a registered barber to manage and supervise the entire shop, including the other barbers; that since Byrd is the licensed owner of the barber shop, this statutory requirement is sufficient showing of the right of control in Byrd to create the statutory relationship of employer-employee; that because of this statutory

right of control, there cannot be said to be a relationship of principal-independent contractor.

The appellant lists four assignments of error. It is clear, however, that only one issue is presented by this appeal. That is, whether the requirements of I.C. § 54–501 place the right of control in the owner of the shop and thus establish the relationship of employer-employee with the other barbers in the shop.

We are in full agreement with the Board that the term "barber shop" means the entire shop, including the barbers therein. We see no justification for reading an exclusion into this statute. The primary reason for its enactment was to protect public health. Pearce v. Moffatt, 60 Idaho 370, 92 P.2d 146 (1939). Because of the physical contact maintained between barber and patron, the term "barber shop" must be held to include not only the physical establishment, but the barbers therein. A statute must be construed in the light of the purpose and intent of the legislature in enacting the statute. In re Gem State Academy Bakery, 70 Idaho 531, 224 P.2d 529 (1950).

Appellant contends that I.C. § 54–501 does not relate to the Employment Security Law. From a thorough study of the Barber Law, however, it appears that the legislature never anticipated that the principal-independent contractor relationship

would exist in a barber shop. The holder of the license is made responsible for seeing that the shop complies with the requirements of the Department of Public Health. I.C. § 54–516 makes it clear that his license may be suspended if the sanitary requirements are not met. The legislature never anticipated that one could lease a portion of the shop and remain an independent contractor. The licensee is required to either keep the entire shop clean or close the entire shop down. As the licensee has the sole responsibility, it must be said that he has a right and duty to control the actions of the other barbers.

■ The Board contends that Byrd's right of control is sufficiently extensive to create the relationship of employer-employee. Obviously, I.C. § 54–501 does not give Byrd the right to control every incident relating to the barber business. He does, however, have the right to control the acts of the barbers in the shop which have influence on the public health. Byrd has the duty to demand that the shop be kept clean; that all of the tools be sanitary; that the other barbers maintain the required standard of personal hygiene. In short, Byrd has a statutory obligation to supervise the work in so far as it in any manner affects the public health. This is sufficient to create the employer-employee relationship. As was stated in Pinson v. Minidoka Highway District, 61 Idaho 731, 106 P.2d 1020 (1940), and Beutler v. MacGregor Triangle Co., 85 Idaho 415, 380 P.2d 1 (1963), " * * * 'The general test is the *right* to control and direct the activities of the employee, or the power to control the details of the work to be performed and to determine how it shall be done, and whether it shall stop or continue, that gives rise to the relationship of employer and employee. * * *' " The rule has been further stated in Merrill v. Duffy Reed Construction Co., 82 Idaho 410, 353 P.2d 657 (1960), Beutler v. MacGregor Triangle Co., supra, and Moore v. Idaho Employment Security Agency, 84 Idaho 1, 367 P.2d 291 (1961), as follows: " 'The right of control by which the nature of the employment is tested is the right to control the work, the details of the work, the manner, method, or mode of doing it, the means by which it is to be accomplished, or specifically, the details, manner, means, or method of doing the work, as contrasted with the result thereof.' * * * "

In National Trailer Convoy Inc. v. Employment Sec. Div., 83 Idaho 247, 360 P.2d 994 (1961), and Moore v. Idaho Employment Security Agency, supra, we dealt with a problem similar to that presented here. In those cases the employer named certain rules and regulations that his representatives had to follow. As in the instant case, the rules were those prescribed by a licensing body. However, as was stated in the Moore case:

"AMFI's right to control is primarily the exercise of supervision to as-

sure compliance with applicable rules, regulations and statutes of those bodies which regulate and control the sale of securities for the asserted purpose of protecting the public. We stated in the National Trailer Convoy case that requirements of a truck driver to meet Interstate Commerce Commission standards and existence of road patrols point toward compliance with governmental regulations; and these are not indicia of an employer-employee relationship. AMFI is required to terminate the relationship if any of its representatives violates regulatory provisions which govern its business. A representative's license to sell is predicated upon his compliance therewith and it is understood to be axiomatic that loss of license terminates selling privileges."

The instant case is clearly distinguishable. In Moore and National Trailer Convoy, the principal was merely the middleman between the licensing body and his representatives. The relationship was such that if the representatives failed to obey the rules, they had their licenses revoked. The principal was only indirectly involved. It would be unrealistic in this instance to say that the principal had been given a right to control by virtue of these regulations as the right to control the representative's conduct clearly resided in the licensing body. In the instant case, however,

Byrd is much more than a middleman, he is vitally involved. The relationship is not between his representatives and the licensing body, but between the licensing body and himself. Byrd, as the licensee, is specifically charged with supervision and management of the shop. If his representatives violate the public health rules and regulations he must be able to terminate the relationship or close his business. Unlike Moore and National Trailer Convoy, the statutes here do not merely vest the right of control in the licensing body, but give it to the employer himself.

Appellant contends that as the Employment Security Law is a revenue statute, it should be construed strictly in his favor. There is no merit in this contention. The Employment Security Law must be liberally construed to the end that its purpose may be accomplished. Striebeck v. Employment Security Agency, 83 Idaho 531, 366 P.2d 589 (1961). As was stated in In re Gem State Academy Bakery, supra:

"The intent and purpose of both the State and National governments in enacting the Unemployment Compensation statute was not to raise money for revenue purposes, but to raise money to do away with unemployment, * * * such tax going into a special fund for that sole purpose, * * * and the administration of the statute was to be extended liberally to all those who, un-

der such liberal construction, could be held to come within its purview. No such intent and purpose was in the mind of the legislature in imposing the Income Tax, which merely goes into the general fund, * * *."

It is clear that the right of control by itself is sufficient to give rise to the employer-employee relationship. Link's School of Business v. Employment Sec. Agency, 85 Idaho 519, 380 P.2d 506 (1963); Beutler v. MacGregor Triangle Co., supra; Moore v. Idaho Employment Sec. Agency, supra; Merrill v. Duffy Reed Construction Co., supra. In addition to the right of control granted by statute, there is also present here the right of either party to terminate the relationship without liability to the other party. As was stated in Beutler v. MacGregor Triangle Co., supra:

"The retained right of discharge of the worker, or the right of either party to terminate the relationship without liability to the other party, is construed to be a strong,—perhaps the strongest and most cogent,—indication of retention of the power to control and direct the activities of the worker, and thus to control detail as to the manner and method of performance of the work. * * *"

Many other jurisdictions with similar statutes have faced problems identical to those presented here. In State Unemploy-ment Compensation Com'n v. Brown, 225 Or. 306, 358 P.2d 502 (1960), the proprietor of a barber shop operated one of the chairs and orally leased the remaining two chairs to the other barbers. The proprietor furnished heat, light, hot water, power, license and furniture in return for 25% of the other barbers' income. The Oregon court held that the relationship which existed was employer-employee and not principal-independent contractor. Their opinion was based upon the right of either party to terminate the relationship without liability and the existence of ORS 690, the Oregon barber licensing law. It is to be noted that ORS 690 is comparable to I.C. § 54–501. The court stated at page 505 of the Pacific Reporter, 358 P.2d:

"* * * It could hardly be said that there were three distinct and independent businesses conducted under the general name of 'Brown's Barber Shop.' If that were the case, they certainly would not be complying with ORS 690 regulating barber shops."

In State v. Iden, 71 Ohio App. 65, 47 N.E. 2d 907 (1942), the Ohio court held that a beauty shop operator was an employer under the Ohio Unemployment Statute. They pointed out that only the operator had a shop license and he could terminate the leases without liability merely by giving fifteen days notice. The court further noted at page 909 of the North Eastern Reporter, 47 N.E.2d:

"It is evidenced that the lease plan was proposed by Iden to relieve himself of social security, workman's compensation, unemployment compensation, and minimum wage requirements and contributions that are prescribed under the various provisions of the respective acts."

See also, Young v. Bureau of Unemployment Compensation, 63 Ga. 130, 10 S.E.2d 412 (1940), Dept. of Employ. Sec. v. Charlie's Barber Shop, 230 Md. 470, 187 A.2d 695 (1963), State v. Goessman, 13 Wash.2d 598, 126 P.2d 201 (1942).

Although Byrd has sought to divorce himself from the employer-employee relationship, the statutory duties impose some essential characteristics of the employer-employee relationship; i. e., the duty to control and the obligation to supervise the acts of the barbers in the shop which have influence on the public health. In the oral agreement, Byrd has also retained the right to terminate the lease at any time without liability to either party. It is clear, therefore, by virtue of the oral agreement and the statutory duties, that Byrd has failed to divorce himself from the employer-employee relationship.

The judgment of the Board is therefore affirmed; no costs allowed.

KNUDSON, C. J., and McFADDEN, TAYLOR and SMITH, JJ., concur.