Mrs. Leo Burson, Commissioner, Department of Employment Security, of the State of Tennessee, Appellant,

*v.*

James Moore, Appellee.

450 S.W.2d 309.

(*Nashville*, December Term, 1969.)

Opinion filed January 16, 1970.

W. L. Moore and W. D. Dodson, Staff Attorneys, Tennessee Department of Employment Security, Nashville, for appellant.

Lyle Reid, Brownsville, Alfred Adams, Jr., Glasgow, Adams & Taylor, Nashville, for appellee.

Mr. Justice Humphreys delivered the opinion of the Court.

Commissioner Burson has appealed from a decree awarding appellee Moore a recovery of unemployment compensation taxes in the amount of $603.60. The sole question is whether appellee Moore was an employer within the meaning of the Employment Security Law. The Chancellor held that he was not, and we concur in this holding.

Prior to August 31, 1966, a partnership composed of appellee Moore and Messrs. Miller and Hamby operated a barber shop in Brownsville, Tennessee. The partner-

ship employed four additional barbers, Messrs. Sweat, Nalor, Dickson and Massengill. The partnership owned and maintained the barber chairs, lights, mirrors and other fixtures. It also furnished without charge all supplies and equipment, except hand tools. For this, the partnership received from the four barber employees thirty percent of their proceeds.

During that time the partnership paid social security taxes and unemployment compensation taxes on these four employees.

As of August 31, 1966, the partnership lost its building lease, and the partnership was dissolved. It disposed of all its assets by sale and by division among the partners, resulting in appellee Moore owning two barber chairs and related equipment, and Hamby, Miller, Sweat, Nalor and Dickson owning one chair and related equipment each.

Appellee Moore bought a building, and on September 1, 1966, at a monthly rental of $25.00 each, leased to Hamby, Miller, Sweat, Nalor and Dickson, space to locate each one's chair and conduct the business of barbering.

Massengill was employed by appellee Moore to operate his extra chair, with Moore furnishing all necessary equipment and supplies, and receiving thirty percent of Massengill's receipts.

Under the new arrangement beginning September 1, 1966, each barber except Massengill ordered and paid for all supplies and equipment he used, maintained his own chair, lights, mirrors and other fixtures and equipment he used. Appellee Moore paid two-sevenths of the utility and telephone costs for himself and Massengill and each of the others paid one-seventh of that cost. No central

cash register was maintained, each barber keeping his receipts. Customers were not directed to particular barbers. Appellee Moore received no benefit from Hamby, Miller, Sweat, Nalor and Dickson, except the $25.00 per month per chair rent from each. Each of these five barbers worked such days and hours as he chose, and without any control by appellee Moore as to the time and manner of work.

Prior to the dissolution of the partnership, it filed federal tax returns showing Sweat, Nalor, Dickson and Massengill as employees and paid taxes, including unemployment compensation taxes, on that basis. After September 1, 1967, all barbers except Massengill filed separate federal income tax returns as self-employed persons and paid their own taxes accordingly. After the dissolution of the partnership and removal to a new location, the complete manner of operation was explained to the State Barber Inspector. The inspector advised the barbers that they would have to pay only one $25.00 fee for a new shop permit and $1.00 for each chair, even though they were self-employed and operating independently. Each barber then paid one-seventh of the cost of the permit, and also paid one-seventh each of the state and county privilege tax collected by the county court clerk. When the shop permit, which showed appellee Moore as owner was received at the shop he explained to the Barber Board's representative that he was not the owner of the shop as indicated on the permit.

In December 1967, appellee Moore leased space in the shop to a Mr. Cathey, an apprentice barber, on the same basis as the other five barbers.

When it came time for the renewal of the shop permit in 1968, all barbers except Mr. Massengill, signed as ap-

plicants and the shop permit was issued in their joint names, but showing C. R. Sweat as the owner.

On these facts employment security taxes were collected on the self-employed barbers for the period ending with the formation of the partnership in September 1968.

The Employment Security Law is found in Title 50, Chapter 13, Tennessee Code Annotated. T.C.A. sec. 50-1307, as far as relevant, defines an "Employing Unit" as an individual which had, subsequent to January 1, 1935, "in its employ one (1) or more *individuals performing services for him * * *.*" (Emphasis supplied.)

T.C.A. sec. 50-1309(6) provides:

*"Services performed by an individual for wages* shall be deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the commissioner that;

"a. Such individual has been, and will continue to be, free from control or direction over the performance of such services, *both under his contract of service and in fact;* * * *.*" (Emphasis supplied.)

T.C.A. sec 50-1309:

"50-1309. Employment.—(1) Subject to the other provisions of this section, 'employment' means *service,* including service in interstate commerce, *performed for wages* or *under any contract of hire,* written or oral, express or implied." (Emphasis supplied.)

TC.A. sec. 50-1315 defines "wages" as "all remuneration paid for personal services from whatever source, including commissions and bonuses and the cash value of all remuneration in any medium other than cash."

It is clear, beyond question, that appellee Moore was not an 'employing unit', liable for the taxes collected. This is the case because the leasing barbers had no contract of hire with Moore, did not perform any services for him or out of which he profited, and the barbers in turn received no wages from him, as wages are defined in T.C.A. sec. 50-1315.

Appellant argues, despite this, that since T.C.A. sec. 62-309 makes it unlawful to operate a barber shop unless it is, "at all times, under the direct supervision and management of a registered barber", and T.C.A. sec. 62-332(12) provides for the registration of barber shops with fees fixed at $25.00 for the shop and $1.00 for each chair after the payment of this $25.00 inspection fee, appellee Moore, in this case the registered barber, had control over the barbers in his shop. And as control is incompatible with the relationship of independent contractor and contractee, citing *Rose & Co. v. Snyder*, 185 Tenn. 499, 206 S.W.2d 897, the barbers were Moore's employees.

■ We cannot accept this argument. The question whether the barbers are employees cannot turn on the single fact that the permit to open the barber shop was issued in Moore's name which carried with it the duty to manage and supervise the shop, in view of the previously mentioned fact propositions (1) that there was no contract of hire of any kind between Moore and the barbers, (2) the barbers performed no services whatsoever for Moore, nor did they owe him any service, and (3) Moore paid them no wages as defined in T.C.A. sec. 50-1315. These are the tests established by the statute and in each instance the facts relied on by the Commissioner fail the test.

We cannot accept this argument for the additional reason that the Barber Law was enacted to promote the health and safety of the public, not its general welfare. The question whether the promotion of the general welfare could be read into the act in the absence of its invocation by any express language was considered in *State v. Greeson et al.*, 174 Tenn. 178, 124 S.W.2d 253 and the idea was rejected.

■ In the light of the limited constitutional purpose of the law and in consideration of the language of T.C.A. sec. 62-309, it is evident the objective was to have a person responsible to the board, not with respect to common law contract relationships such as employer and employee and lessor and lessee, which are not remotely involved in this subject, but exclusively with respect to sanitation and safety. So construed the Code sections relied on by the Commissioner cannot have the effect of creating employer-employee relationships between appellee and the barbers. *State v. Greeson*, supra.

In reaching these conclusions we have considered the cases relied on in appellant's brief, particularly *Byrd v. Employment Security Agency*, 86 Idaho 469, 388 P.2d 100; *Sanders v. Oklahoma Employment Security Commission*, Okl., 430 P.2d 789, and *Tharp v. Unemployment Compensation Commission*, 57 Wyo. 486, 121 P.2d 172, and decline to follow them because they are distinguishable on their facts and reach legal conclusions with respect to the effect of statutory provisions making one registered barber responsible for sanitation in a shop with which we disagree.

The assignments of error are overruled and the decree of the Chancellor is affirmed.

DYER, CHIEF JUSTICE, and CHATTIN, CRESON and Mc-CANLESS, JUSTICES, concur.