701 P.2d 203

Susan HILL, dba Hill's Country Club Academy & Day Care, Employer Account # 115701-9, Employer-Appellant,

v.

STATE of Idaho, DEPARTMENT OF EMPLOYMENT, Respondent.

Re Betty Ann Clarke, SSA 519 16 8490.

No. 15467.

Supreme Court of Idaho.

April 11, 1985.

Susan Hill, Boise, pro se.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Carol Lynn Brassey, and Roger T. Martindale, Deputy Attys. Gen., Boise, for respondent.

PER CURIAM.

Sometime in 1981, appellant leased space from a local church and began operating a child care facility for children aged two through kindergarten. The facility is open from 7:00 a.m. to 6:00 p.m., five days a week. These hours are set by appellant and the employees are expected to be in attendance according to a schedule set by appellant. The appellant collects all fees, supplies all furnishings, equipment and materials for the operation of the center and supervises the center daily. The workers are responsible to appellant, who is in turn

responsible to the parents. Appellant may terminate employment freely. A curriculum guide is maintained by appellant within which the workers must plan and execute the training of the children. (On November 2, 1981 and December 18, 1981 the Department of Employment sent appellant reports to determine appellant's status. These reports were never returned.)

In November, 1981, after answering an ad placed in the paper by the appellant, the claimant, Betty Ann Clarke, was hired by appellant to teach at the child care center. Although claimant is a certified teacher, it was not a prerequisite for the position. After a monthly pay rate was negotiated, from which no taxes were deducted, the claimant was assigned the position of teacher/day care worker to a group of four and five-year-olds.

During the the course of claimant's employment, it was necessary for the claimant to be absent. The time was established with the approval of the appellant. For some time during the employment, the claimant was allowed to leave one hour early on Tuesday afternoons. The appellant maintained a monthly record on the basis of the number of hours it was necessary to substitute for the claimant. The appellant terminated the claimant's services July 4, 1982. On July 13, 1982, claimant filed a claim for benefits with the Department of Employment.

The Department of Employment (D.O.E.) found that appellant was a covered employer and that the services of the claimant were covered employment. Therefore, the D.O.E. awarded claimant unemployment compensation. From that decision, appellant appealed. After a hearing, an appeals examiner affirmed the D.O.E. Appellant then appealed to the Industrial Commission and requested an additional hearing. The Industrial Commission denied the appellant's request for the additional hearing and affirmed the decision of the appeals examiner. Appellant now appeals the Industrial Commission's decision.

■ Initially, we note that appellant has raised over twenty five issues on appeal. Most of appellant's arguments are that the Employment Security Law (E.S.L.), I.C. § 72–1301 *et seq.* (1984), violates various provisions of the Idaho and United States Constitutions. Since statutory enactments are presumed constitutional unless expressly prohibited by constitution, *Idaho Power and Light Company v. Blomquest*, 26 Idaho 222, 141 P. 1083 (1914), appellant must show that specific provisions of the E.S.L. violate either the Idaho or United States Constitution. However, appellant's arguments in support of most of the issues raised by appellant are merely conclusory.

The only issues of substance are whether the reporting requirements of the E.S.L. violate appellant's fifth amendment right against self-incrimination and whether appellant is required to pay unemployment compensation to claimant because claimant's services were covered employment under I.C. § 72–1316 and because appellant is a covered employer under I.C. § 72–1315.[1]

■ Appellant first challenges the constitutionality of the E.S.L. Appellant contends that I.C. § 72–1337, which requires an employer to keep records prescribed by the D.O.E., violates appellant's privilege against self-incrimination because these records could be used as evidence against appellant.

The appellant's argument is misplaced for two reasons. First, the pertinent portion of the fifth amendment (applicable to the state by virtue of the fourteenth amendment) provides: "nor shall be compelled in any criminal case to be a witness against himself...." To that end, I.C. § 72–1340 specifically grants an employer protection against self-incrimination by the

1. Appellant also contends that the reporting requirements violate her right to be free from unreasonable search and seizure. However, similar reporting requirements under other regulatory laws have been upheld against such challenges. *See Davis v. United States*, 328 U.S. 582, 590, 66 S.Ct. 1256, 1259, 90 L.Ed. 1453 (1946); *Wilson v. United States*, 221 U.S. 361, 380, 31 S.Ct. 538, 544, 55 L.Ed. 771 (1910).

records that the Department requires the employer to keep. It provides:

"No person shall be excused from attending and testifying or from producing books, papers, correspondence, memoranda, and other records before the director, his authorized representative, the commission, or an appeals examiner, or in obedience to the subpoena of any of them, on the ground that the testimony or evidence, documentary or otherwise, required of him may tend to incriminate him or subject him to a penalty or forfeiture; but no individual shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, documentary or otherwise, except that such individual so testifying shall not be exempt from prosecution and punishment for perjury committed in so testifying." I.C. § 72–1340 (1973).

Thus, the records that the D.O.E. requires appellant to keep cannot be used against appellant in a criminal matter if the appellant invokes the privilege in that matter.

Second, "[t]he central standard for the privilege's application has been whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." *Marchetti v. U.S.*, 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1967). In the context of the Idaho Income Tax Act, we have stated that

"unspecific claims that the filing of a tax return may be self-incriminatory do not justify a refusal to file. Just as a witness cannot refuse to testify on the ground that he will incriminate himself by committing perjury if he does, taxpayers cannot refuse to file income tax returns on the ground that they contemplate committing a crime, such as filing a criminally evasive or fraudulent return. (citations omitted). Appellant's broad assertion that his Fifth Amendment rights would be infringed if he is compelled to file a return is totally unsubstantiated."

*Idaho State Tax Commission v. Payton,* 107 Idaho 258, 259, 688 P.2d 1163, 1164 (1984).

In this case, appellant has broadly asserted that appellant's fifth amendment rights would be violated if appellant is required to keep records pursuant to I.C. § 72–1337. Appellant has not introduced any evidence whatsoever showing that she would be subject to substantial and real hazards of incrimination by keeping such records.

Accordingly we hold that I.C. § 72–1337 does not violate appellant's fifth amendment right against self-incrimination.

Appellant next challenges the Industrial Commission's determination that appellant is a covered employer and that the claimant's services were covered employment. I.C. § 72–1316 provides in pertinent part:

"(d) Services performed by an individual for remuneration shall, for the purposes of the employment security law, be covered employment:

"(1) Unless it is shown:

"(A) That the worker has been and will continue to be free from control or direction in the performance of his work, both under his contract of service and in fact, and

"(B) That the worker is engaged in an independently established trade, occupation, profession, or business;"

With respect to condition (A),

"[t]he general test of whether the right to control is sufficient to give rise to the relationship of employer and employee is whether or not the control extends to '... the details of the work, the manner, method, or mode of doing it, the means by which it is to be accomplished, or, specifically, the details, manner, means or method of doing the work, as contrasted with the result thereof.'" *Department of Employment v. Bake Young Realty,* 98 Idaho 182, 184, 560 P.2d 504, 506 (1977) (citations omitted).

■ The Industrial Commission determined that claimant was not free from

control or direction in the performance of her work. The record reflects that the claimant performed whatever duties that appellant wanted done, that she received supervision from appellant almost daily, that she received verbal instructions from appellant as to "what we were to do, what time we were to take our break, what time we were to come in," that appellant set the hours for the school as well as those for the claimant, that appellant posted a schedule as to who was going to work and what hours, that appellant had the right to direct the claimant's day-to-day activities, and that the claimant obtained the appellant's approval in order to take time off. Therefore, substantial evidence supports the Industrial Commission's determination that claimant was not free from control or direction in the performance of her work.

█ With respect to condition (B), that the worker be engaged in an independent trade or business, the following factors are to be considered: (1) whether the worker has the authority to hire subordinates; (2) whether the worker owns major items of equipment; (3) whether either party would be liable to the other upon peremptory termination of the business relationship. *Dept. of Employment v. Brown Bros. Const.*, 100 Idaho 479, 481, 600 P.2d 783, 785 (1979).

█ The Industrial Commission found that the claimant was not engaged in an independent trade or business. The record reflects that claimant did not have the right to hire assistants. Instead, when she found it necessary to be away from work, claimant sought appellant's approval. Claimant would then trade shifts with another worker or appellant would find a substitute for claimant. Further, the claimant did not own or furnish any of the major items of equipment. Finally, both appellant and claimant testified that neither party was contractually liable to the other for a peremptory termination of the business relationship. Claimant did not advertise her services or collect any fees from the parents for the services she performed. Instead, claimant was paid on a regular monthly basis and appellant could terminate claimant's employment at will. Therefore, substantial evidence supports the Industrial Commission's determination that claimant was not engaged in an independent trade or business.

Accordingly, the services performed by claimant for appellant were covered employment under I.C. § 72–1316.

█ I.C. § 72–1315 provides in pertinent part:

"**72–1315. Covered employer.**—The term 'covered employer' means:

"(a) Any person who, in any calendar quarter in either the current or preceding calendar year paid for services in covered employment wages of three hundred dollars ($300) or more, or for some portion of a day in each of twenty (20) different calendar weeks, whether or not consecutive, in either the current or preceding calendar year employed at least one (1) individual (irrespective of whether the same individual was in employment in each such day)."

The Industrial Commission found that appellant was a covered employer under this section and therefore required her to pay claimant unemployment compensation. The record reflects that appellant paid over $300 to claimant for claimant's services. Therefore, substantial evidence supports the Industrial Commission's determination.

We have considered appellant's other contentions and consider them to be without merit. Therefore, the decision of the Industrial Commission is affirmed.

Costs to respondent.

No attorney fees on appeal.