456 P.2d 268

**Samuel F. SWAYNE dba Orofino Mobile Village, Plaintiff-Appellant,**

v.

**DEPARTMENT OF EMPLOYMENT, Defendant-Respondent.**

**No. 10322.**

Supreme Court of Idaho.

June 26, 1969.

Swayne & McNichols, Orofino, for appellant.

Robert C. Youngstrom, Boise, for appellee.

SPEAR, Justice.

The issue presented by this case is whether a certain lease agreement, to which the appellant is a signatory, gives the appellant control of the lessee's activities so as to constitute the lessee an employee within the terms of I.C. § 72-1316.[1]

The undisputed evidence in this case indicates that sometime prior to August 1, 1965, the appellant, Samuel F. Swayne, entered into an agreement to sell to his son, S. David Swayne, a certain piece of property in Orofino, Idaho. The property was, through the efforts of David Swayne and his wife, at least partially converted into a mobile home court.

Subsequently, David Swayne decided to return to school at the University of Idaho, in Moscow, Idaho. In contemplation of the move, the lease agreement in question was executed. The agreement was a tripartite one, made and entered into be-

---

1. 72–1316 Covered employment.—* * *
   (d) Services performed by an individual for remuneration shall, for the purposes of the Employment Security Law, be covered employment unless it is shown: (1) that the worker is free from control or direction in the performance of his work under his contract of service, and (2) that the worker is engaged in an independently established trade, occupation, profession, or business.

tween Samuel Swayne and his wife as "owners"; David Swayne and his wife as "purchasers," also referred to in the lease agreement as "lessors"; and Virginia J. Turner, a *femme sole*, as "lessee." The lease was to run from the first day of August, 1965, until the first day of August, 1968. The compensation arrangement was as follows:

"The rental of the said premises shall be on a share of the proceeds basis, to-wit: The said lessee shall receive a sum of Three Dollars ($3.00) for each space rental of Twenty-Five Dollars ($25.00) collected, and the further sum of Fifty Cents ($.50) per space for each additional $5.00 increase in the rental charged and collected; the purchasers shall receive the sum of Eight Dollars ($8.00) per space rental collected as rental for their equity, and the owners shall receive all of the rest of the receipts and income from the business. Out of the remainder income paid to the owners they will pay all expenses of the business and apply the overplus, if any, to the unpaid balance of the purchase price and interest of that certain contract of purchase between the owners and the purchasers herein.

"It is further agreed that no charge shall be made to the lessee for one trailer space for her own use and occupancy and as an office, nor for water, electricity, business telephone, gas or TV used in connection therewith."

The lessors made certain general covenants such as to keep the lessee in quiet and peaceful possession, and to properly co-operate with the lessee "in all matters requiring any act on the part of the lessors during the term of [the] lease."

The lessee agreed to incur no indebtedness for capital improvements in excess of $300.00 without the consent of the owners. She also made several covenants with respect to the maintenance and operation of the trailer court business. She was to collect rentals and utility charges and deposit them in a specific bank; keep accurate account of receipts and disbursements;

before the 15th of each month submit an income and expense statement; provide for necessary care and maintenance of the grounds and facilities; supervise any construction or improvements; maintain the rules and order of the court; read meters and keep account of the utilities; provide a substitute manager if she were to be away from the premises temporarily; prohibit the accumulation of trash and filth; and prohibit undesirable activities. In addition, she promised not to abandon the premises before the expiration of the lease without adequate notice to the lessors. She was prohibited from subletting or assigning the lease without the consent of the lessors. Finally, she was prohibited, without the consent of the owners, from incurring any expense or lienable charge against the business, other than the usual month-to-month ordinary expenses, in a sum in excess of $300.00.

The lease further provided that in the event of any disagreement between the parties, the matter would be submitted to arbitration for resolution. The last clause in the agreement stated:

"It is further agreed that payment of $3.00 per space, per month, for any space rentals collected shall constitute reimbursement for personal services and management of the business and no deductions shall be made therefrom for expenses in the operation of the business."

According to the undisputed testimony of the appellant and the successor lessee, Mrs. Lucy L. Wallace, this lease worked in practice substantially as set forth in the agreement. The manager-lessee obtained the necessary services for maintenance and upkeep of the premises. She made the checks out for the business expenses and they were signed by the appellant. Mrs. Wallace furnished and maintained office and other equipment which she used in the performance of her duties. There was no direct supervision whatsoever by either appellant or his son, the lessor. It was the lessee's obligation to see that the trailer court occupancy was maintained at full

capacity. She had, and exercised, the right to rent spaces and to terminate rentals.

On the basis of these facts, the Appeals Examiner, in a decision later affirmed by the full Board, decided that this was covered employment. The Appeals Examiner cited I.C. § 72–1316(a) and (d) as well as the Minnesota case of Rochester Dairy Co. v. Christgau, 217 Minn. 460, 14 N.W.2d 780 (1944), as the basis for his decision. The Examiner stated that it was the *right to control,* not actual control, which was material and held that the agreement between the parties was not in fact a lease. The Examiner felt that the appellant still maintained control of the expenses of the business, whereas a true lease would have given control of expenses to the lessee. Furthermore, the Examiner was of the opinion that an individual (in this case the lessee) who was not liable for expenses or subject to the losses which the business might incur could not be considered an operator of the business. Apparently the appellant never provided for the eventuality of losses in the lease, since expenses were directly proportional to income. Very little fixed expense was involved in the operation or maintenance of the property, other than property taxes. Furthermore, it should be noted that the lessee's income was directly proportional to the number of trailer spaces which she rented.

Appellant contends that to be an employer one must be in the business as a proprietor and an operator for one's own pecuniary gain. He maintains that the division of rental income does not constitute the payment of wages. He further argues that the parties must have intended to establish an employer-employee relationship and in order for appellant to be adjudged an employer he must have had the right to control the manner, method and detail of accomplishment of the lessee's work in this case. Appellant relies heavily on the aspect of the right to terminate. He argues that in a case such as this, where the relationship is for a fixed time and neither party can terminate it without liability, the relationship is that of lessee-lessor rather than employee-employer. Finally, he argues that where the lessee furnishes at least some of his or her own equipment, such as a car and office equipment as in this case, there is a strong indication of a lessee-lessor relationship rather than that of an employee-employer.

Respondent urges that the latest amendment of I.C. § 72–1316(d) has broadened the scope of that provision. We agree that in one respect I.C. § 72–1316(d) has been broadened by requiring that a non-employee be both free from control *and* engaged in independently established business. However, the latest expression of legislative will on the subject appears to have rejected the common law concept of master-servant or employer-employee relationship which was established upon a showing of a *right* to control regardless of control in fact.[2] E. g., Link's School of Business, Inc. v. Employment Sec. Agency, 85 Idaho 519, 380 P.2d 506 (1963); National Trailer Convoy, Inc. v. Employment Sec. Div., 83 Idaho 247, 360 P.2d 994 (1961).

Under the previous version, which included the common law definition of employee, hiring someone and either reserving the right of control or actually controlling the manner and means of accomplishing the objective would have made that person an "employee" unless his was the type of occupation customarily determined to be independent. Under the present version the status of independent contractor is not enough to avoid coverage.

2. I.C. § 72–1316(d) formerly provided: "Services performed by an individual only as an employee shall be covered employment, but there shall not be included in said covered employment nor shall such term employee include, (1) any individual who, under the usual common-law rules applicable in determining the employer-employee relationship, has the status of an independent contractor or (2) any individual (except an officer of a corporation) who is not an employee under such common-law rules."

One must also be "free from control," which is different than being a common law "employee." The present provision of I.C. § 72–1316(d) (1) does not utilize the common law term which was defined as including the *right* of control as well as actual control. The present version speaks only in terms of *actual* control. An obvious legislative change of a common law rule or term cannot be ignored. Moon v. Bullock, 65 Idaho 594, 607, 151 P.2d 765 (1944). Furthermore, when a statute is amended it is presumed that a change in application and meaning was intended, e. g., Employment Sec. Agency v. Joint Class "A" School Dist. No. 151, 88 Idaho 384, 400 P.2d 377 (1965); Wellard v. Marcum, 82 Idaho 232, 351 P.2d 482 (1960).

■ Therefore, we reject the position of the Appeals Examiner that under the present version of I.C. § 72–1316(d) *right* of control is sufficient to establish covered employment. Rather we hold that in order to avoid liability under the employment security law, an "employer" must show that the worker is engaged in an independently established trade or business *and* free from *actual* control by the "employer."

Analyzing the facts of the case at bar in light of the statute, we are persuaded that there was no *right* of control. The Appeals Examiner's determination that the lessee had no control of the expenses of the business has no basis in fact. The undisputed facts in this case and the lease agreement itself show unequivocally that the lessee could incur *any* expenses she deemed necessary. The only limitation was that expenses should not exceed $300.-00. There is nothing in the record to indicate that $300.00 was a restrictive amount. It may well be that $300.00 was far in excess of usual expenses.

The Appeals Examiner also found that there was control through appellant's supposed inherent power to refuse to pay the expenses. This likewise has no basis in fact. If appellant refused to pay for an expense incurred by the lessee, appellant would be liable to lessee in damages for breach of contract.

Finally, the Appeals Examiner determined that one who was not liable for losses in the operation of the business could not be considered an "operator" of the business. This finding goes more to the elements of I.C. § 72–1316(d) (2) than to I.C. § 72–1316(d) (1) but it likewise is unsupported by the record in this case. While it is true that liability for losses would be a consideration in the usual case, Merrill v. Duffy Reed Construction Co., 82 Idaho 410, 416, 353 P.2d 657 (1960), the undisputed testimony in this case is that there would no expenses or "loss" if there were no income. The testimony before the Appeals Examiner reveals that expenses were directly proportional to income.

■■ Insofar as the element of whether the lessee was engaged in an independent business is concerned, several factors are important:

(1) Did the lessee have authority to hire subordinates? National Trailer Convoy, Inc. v. Employment Sec. Division, 83 Idaho 247, 253, 360 P.2d 994 (1961).

(2) Did the lessee own major items of equipment? National Trailer Convoy, Inc. v. Employment Sec. Division, supra.

(3) Would either party be liable to the other for a peremptory termination of the business relationship? Beutler v. MacGregor Triangle Company, 85 Idaho 415, 422, 380 P.2d 1 (1963); National Trailer Convoy, Inc. v. Employment Sec. Division, supra.

As to the first element, this was the lease of a going business. That in itself gave the lessee the right to hire subordinates in the absence of an agreement to the contrary. Furthermore, the lease gave the lessee both the right and the obligation to hire personnel for maintenance and supervision of the business.

■ Whether the lessee owned major items of equipment is subject to question, but she did own all the equipment necessary for the operation of this particular business, i. e., office space, office equipment and a car. Where a person owns all the movable assets necessary for the operation of a business, the second test is satisfied.

■ As the court, in effect, held in Beutler v. MacGregor Triangle Company, supra, the right to terminate the relationship without consequence is the strongest indication that a worker is not an independent business-man. In this case however a termination of the relationship by either appellant or the lessee prior to August 1, 1968, would have made the defaulting party liable in damages.

Having determined that the lessee was not subject to control in the performance of the lease agreement and having further determined that the lessee was engaged in an independent business, we do not find it necessary to pass on the other issues raised by this appeal, including respondent's questionable position in holding the appellant rather than the lessor to be an "employer."

The order is reversed. Costs to appellant.

McFADDEN, C. J., McQUADE and DONALDSON, JJ., and HAGAN, D. J., concur.