**SOUTH DAKOTA DEPARTMENT OF LABOR, Unemployment Insurance Division, Appellant,**

v.

**TRI STATE INSULATION COMPANY, Appellee.**

No. 13356.

Supreme Court of South Dakota.

Submitted on Briefs Oct. 22, 1981.

Decided Jan. 20, 1982.

Julie M. Johnson, Sp. Asst. Atty. Gen., Aberdeen, for appellant.

Ronald D. Campbell of Heidepriem, Widmayer & Campbell, Miller, for appellee.

WOLLMAN, Chief Justice.

Appellant (Department) appeals from a judgment of the trial court that appellee (Tri State) was not liable for unemployment insurance taxes on certain salesmen. We affirm.

SDCL 61–1–11 sets forth the test to be applied in determining whether an employer-employee relationship exists for unemployment insurance tax liability purposes:

Services performed by an individual for wages shall be deemed to be employment subject to this title unless and until it is shown to the satisfaction of the department that:

(1) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

(2) Such service is either outside the usual course of the business for which such service is performed, or that such

service is performed outside of all the places of business of the enterprise for which such service is performed; and (3) Such individual is customarily engaged in an independently established trade, occupation, profession or business.

The parties agree that all three elements of the statutory test must be met before an exemption from payment of unemployment compensation taxes may be found. See, e.g., *O'Brian v. Michigan Unemployment Compensation Com'n*, 309 Mich. 18, 14 N.W.2d 560 (1944); *North American Bldrs., Inc. v. Unemployment Comp. D.*, 22 Utah 2d 338, 453 P.2d 142 (1969).

The hearing examiner for the Department determined that Tri State had satisfied the first two portions of the test, but concluded it had not established that its salesmen were not "customarily engaged in an independently established trade, occupation, profession or business," as required by SDCL 61–1–11(3). On appeal, the circuit court reversed this latter determination and held that the salesmen were independent contractors and not employees of Tri State.*

Tri State is a South Dakota company selling insulation products, awnings, windows, and sidings. At the time the administrative hearing took place, five salesmen were selling Tri State's products. These persons meet no set schedules, nor do they work a required number of hours per week. They are not required to report to Tri State and receive no supervision from Tri State. Generally, these salesmen work out of their homes but do not serve any established territory. They pay all of their own expenses, including advertising, and they have no financial investment in Tri State. The record is clear that the salesmen are free to perform simultaneously the same sales services for other companies, including Tri State's competitors. One of the Tri State salesmen was in fact selling livestock feed in addition to selling Tri State's products.

Tri State does not discharge salesmen who are not productive. Tri State's only control over the salesmen is its right to accept or reject orders submitted to it by them. Moreover, all of the salesmen file their income tax returns based on a self-employed status, and each pays his own social security tax.

The Department contends that the "proprietary interest" test that has been applied by a number of courts mandates the conclusion that Tri State's salesmen do not fall within the definition set forth in SDCL 61–1–11(3). In ruling on a statute identical to SDCL 61–1–11, the Supreme Court of Vermont held:

The adverb "independently" clearly modifies the word "established", and must carry the meaning that the trade, occupation, profession or business was established, independently of the employer or the rendering of the personal service forming the basis of the claim. The present tense "is" indicates the individual must be engaged in such independent activity at the time of rendering the service involved. "Customarily" means usually, habitually, regularly. *Fuller Brush Co. v. Industrial Comm.*, 99 Utah 97, 104 P.2d 201, 129 A.L.R. 511. The language used contemplates that one engaged in an independently established trade, occupation, profession or business has a proprietary interest therein to the extent that he can operate it without hindrance from any individual whatsoever. *Murphy v. Daumit*, 387 Ill. 406, 56 N.E.2d 800; *Life & Casualty Ins. Co. v. Unemployment Compensation Comm.*, 178 Va. 46, 16 S.E.2d 357. An established business is one that is permanent, fixed, stable and lasting. *Unemployment Compensation Comm. v. Collins*, 182 Va. 426, 29 S.E.2d 388.

*Vermont Securities v. Vermont Unemploy. Comp. Com'n*, 118 Vt. 197, 104 A.2d 915, 917 (1954).

---

* As stated in the trial court's memorandum decision, both parties accepted the hearing examiner's decision that Tri State had satisfied the first two parts of the statutory test.

Likewise, in a case involving salesmen who sold aluminum windows and doors and similar products on a commission basis under arrangements having some similarities to the relationship between Tri State and its salesmen, the Supreme Judicial Court of Maine held, construing a statute identical to SDCL 61–1–11:

> Lastly, under clause (3) the evidence failed to establish that the individuals were "customarily engaged in an independently established trade, occupation, profession or business." We do not have here the barber, the baker, the plumber, the doctor, the lawyer, or a man with an independent calling. To say that the individual selling Hasco products had a proprietary interest in an occupation or business to the extent that he could operate without hindrance from any source stretches the relationship between Hasco and the individual beyond recognition. See *Murphy v. Daumit*, 387 Ill. 406, 56 N.E.2d 800.

*Hasco Manufacturing Co. v. Maine Employ. Sec. Com'n*, 158 Me. 413, 185 A.2d 442, 445 (1962).

In *Standard Chem. Mfg. Co. v. Employment Sec.*, 605 P.2d 610 (Mont.1980), the Supreme Court of Montana was called upon to determine whether farmer-rancher salesmen of livestock nutritional products fell within the definition of a statute identical to SDCL 61–1–11(3). In holding that they did not, the Montana court reviewed the decisions that have followed the proprietary interest test, including the *Vermont Securities* and *Hasco Manufacturing Co.* cases, supra, and concluded:

> Upon a review of the record before us, we find that the District Court abused its discretion in holding that respondent's salesmen were independent contractors and were not subject to unemployment compensation benefits. Respondent's salesmen here are employees. They have no independently established business of their own. Their "business" does not exist independently and apart from their relationship with respondent. They are, rather, dependent upon respondent for their employment. Should their relation-

ship with respondent terminate, their "business" would also terminate as well. They have no authority to hire subordinates; they have the right, as does respondent, to terminate their employment; and, they have no liability for a peremptory termination of their relationship. It is also doubtful whether respondent's salesmen may truly be called "nutritional experts." There is little formal training the salesman [sic] receive from which to gain such expertise. Respondent only occasionally assists its salesmen in determining customers' nutritional needs and in problems relating to toxicity. For these reasons, we hold that the District Court abused its discretion and that respondent's salesmen are employees.

*Standard Chem. Mfg. Co. v. Employment Sec.*, supra, 605 P.2d at 615–16.

■ Notwithstanding the line of authority represented by the foregoing decisions, we conclude that the trial court was correct in holding that the salesmen fell within the definition set forth in SDCL 61–1–11(3). True, they may not have all of the accouterments one usually associates with those engaged in an independent business, trade, occupation, profession or business—but then, they need little more than an automobile and a ballpoint pen to carry on what for them is as tangible a trade as that, say, of a self-employed contract welder or automobile repairman. That they may be temporarily unemployed if not selling products for Tri State, one of its competitors, or any other distributor of products, is not determinative of the issue. As stated by the Supreme Court of Utah in the *North American Bldrs.* case, supra:

> The Board has reasoned that the installers were not engaged in an independently established trade because when they were not employed by plaintiff or its competitors in the industry, they were unemployed. This same argument is equally applicable to any tradesman, if no one among his potential clientele needs his services at a particular time, he is unemployed; but this circumstance does

not bring him within the coverage of the Act. . . .

453 P.2d at 145.

In *Swayne v. Department of Employment*, 93 Idaho 101, 456 P.2d 268 (1969), the Supreme Court of Idaho held that in determining whether a worker fell within the definition of a statute substantially similar to SDCL 61–1–11(3), the court would consider (1) whether the worker had authority to hire subordinates; (2) whether the worker owned major items of equipment; and (3) whether either party would be liable to the other for a peremptory termination of the business relationship. In a later case, however, the Idaho court expanded upon the *Swayne* test:

> Nor are the three tests of *Swayne* the only applicable criteria for determining the parties' relationship. *Department of Employment v. Bake Young Realty*, supra. The method of payment is a factor to be considered. *National Trailer Convoy, Inc. v. Employment Security Agency*, 83 Idaho 247, 360 P.2d 994 (1961). Here it is undisputed that payment was based upon the total amount of timber actually cut by each faller, not upon the hours of work performed. "Payment for a result or by the job is an indicia that the relationship is one of contractee and independent contractor." *Id.* at 253, 360 P.2d at 998 (quoting 56 C.J.S. *Master and Servant*, § 3(8)). And in *Moore v. Idaho Employment Security Agency*, 84 Idaho 1, 6, 367 P.2d 291, 294 (1961), the court noted "a strong indication of the relationship of principal and independent contractor" in the fact that "AMFI did not direct the hours of work nor the period of the day such work was carried on." Such is the fact here (citation omitted).

*Dept. of Employment v. Brown Bros. Const.*, 100 Idaho 479, 600 P.2d 783, 786 (1979).

We believe that what was said by the Supreme Court of Georgia in a case that involved fashion show directors is applicable to the case before us. In discussing the proprietary interest test as set forth in *Life & Cas. Ins. Co. v. Unemployment Comp. Comm.*, 178 Va. 46, 16 S.E.2d 357 (1941), the Georgia court held:

> This court is not bound by the construction put on a similar or even an identical statute of a foreign jurisdiction by a court of that jurisdiction. Even if this construction be adopted, however, there is sufficient evidence to show compliance therewith. Under the contract, the fashion show director is free to sell the products of other companies, even of competitors of the employer company. The fact that the contract recognizes this freedom, plus the fact of the intermittent and almost casual relationship to the company, indicate that it is the common practice for such individuals to be "customarily engaged in an independently established trade, occupation, profession or business." We believe that it would be unduly restrictive to construe this provision so as to require a formal, legal organization in order to comply with it, which would exclude even a one-person occupation of salespersons. Therefore, we hold that element (C) was established by the evidence.

*Sarah Coventry, Inc. v. Caldwell*, 243 Ga. 429, 254 S.E.2d 375, 379 (1979).

So also in the instant case, the activities of the salesmen have the attributes of an independently established occupation. Were they not selling Tri State's products surely they would be engaged in selling those of someone else. That their proprietary interest in their occupation may not be manifested visibly to the same degree of that of the barber, the baker, the plumber, the doctor, the lawyer or the man with an independent calling (whatever the latter term means), as itemized by the court in Hasco Manufacturing Co., supra, they do have a proprietary interest in their skills— in the ability to persuade someone to purchase a product that he might otherwise not have.

In affirming the trial court, we do not mean to suggest that every relationship between manufacturer, retailer, or distributor and its salesmen can be thrust into a mold that will satisfy the three-part test of

SDCL 61–1–11. Nor are we unmindful of the fact that the continued solvency of the unemployment insurance fund established under the provisions of SDCL ch. 61–4 is dependent upon an interpretation of the law that will accomplish the purposes for which the fund was established. Nonetheless, we are satisfied that the trial court analyzed correctly the circumstances surrounding the relationship between Tri State and its salesmen and that it did not err in reversing the hearing examiner's determination that Tri State had not met its burden of satisfying subsection 3 of SDCL 61–1–11.

We have considered the other contention raised by the Department and conclude that in the circumstances of this case it is without merit.

The judgment is affirmed.

All the Justices concur.