186 P.3d 639

**EXCELL CONSTRUCTION, INC.,**
**Employer–Appellant,**

v.

**IDAHO DEPARTMENT OF COMMERCE AND LABOR, Respondent.**

No. 33574.

Supreme Court of Idaho,
Boise, March 2008 Term.

June 4, 2008.

1. The term "rider" is used to refer to the retained jurisdiction program.

Wetzel & Wetzel, P.L.L.C., Coeur d'Alene, for appellant. Dana L. Rayborn Wetzel argued.

The Hon. Lawrence Wasden, Attorney General, Boise, for respondent. Katherine Takasugi argued.

EISMANN, Chief Justice.

This is an appeal from a determination that various sheetrock hangers and tapers were not engaged in an independently established trade and that their work therefore constituted covered employment. We reverse the determination and award attorney fees to the appellant.

## I. FACTS AND PROCEDURAL HISTORY

Excell Construction, Inc., (Excell) is a construction company that, among other things, installs sheetrock on building projects. There are two types of sheetrock workers—hangers and tapers. Hangers install the sheetrock, cutting it to fit and sawing or cutting holes for electrical outlets, air-conditioning units, and plumbing. Tapers use joint compound and tape to finish the joints between sheetrock panels, and they fill nail or screw depressions and other imperfections. Their work takes several sequential steps, including sanding, to produce a smooth surface.

Excell permits the workers who hang and/or tape the sheetrock to elect whether they will work as employees or independent

contractors. In March 2001, the Idaho Department of Commerce and Labor (Department) conducted a compliance audit of Excell covering the first quarter of 1999 through the first quarter of 2001. As a result of that audit, the Department determined that the sheetrock hangers and tapers who had elected to be independent contractors were engaged in covered employment under Idaho's Employment Security Law, Idaho Code §§ 72–1301 *et seq.* It assessed Excell unemployment insurance taxes and penalties totaling $6,353.26. Excell appealed, and the matter was heard by an appeals examiner. After two days of hearings, the appeals examiner upheld the determination. Excell appealed to the Industrial Commission, asking it to take additional evidence. It refused to do so, but did conduct a *de novo* review of the record.

In order to overcome the presumption that the hangers and tapers were engaged in covered employment, Excell was required to establish two things: (a) that they had been and will continue to be free from control or direction in the performance of their work, both under their contracts and in fact, *and* (b) that they were engaged in an independently established trade, occupation, profession, or business. I.C. § 72–1316(4). The Industrial Commission determined that Excell had failed to prove that the sheetrock hangers and tapers were free from control or direction in the performance of their work and therefore found that Excell had failed in its burden of proof.

Excell appealed to this Court. We reversed the Commission's finding because its legal conclusion that Excell controlled how the sheetrock hangers and tapers performed their work was not supported by the facts and because the Commission had misapplied the facts to the law. Because the Commission had not addressed whether the sheetrock hangers and tapers were engaged in an independently established trade, occupation, profession, or business, we remanded the case for a determination of that issue. *Excell Constr., Inc. v. State, Dept. of Labor,* 141 Idaho 688, 116 P.3d 18 (2005).

Upon the case being remanded to the Commission, it remanded it to the appeals examiner to take additional evidence. After three days of evidentiary hearings, the appeals examiner found that Excell had failed to prove that sheetrock hangers and tapers were engaged in an independently established trade, occupation, profession, or business. The appeals examiner therefore affirmed the ruling that they were engaged in covered employment. Excell appealed to the Industrial Commission, which conducted a *de novo* review of the record. It adopted the findings of fact of the appeals examiner, added some additional findings, and affirmed the finding that the sheetrock hangers and tapers were engaged in covered employment. Excell timely appealed to this Court.

## II. ANALYSIS

### A.

Excell offers the sheetrock hangers and tapers the option of being independent contractors or employees. The issue in this case is whether those who chose to be independent contractors are engaged in covered employment. Idaho Code § 72–1316(4) provides:

> Services performed by an individual for remuneration shall, for the purposes of the employment security law, be covered employment unless it is shown:
>
> (a) That the worker has been and will continue to be free from control or direction in the performance of his work, both under his contract of service and in fact; and
>
> (b) That the worker is engaged in an independently established trade, occupation, profession, or business.

IDAPA 09.01.35.112.04 lists fifteen factors to be considered when determining whether a worker is engaged in an independently established trade, occupation, profession, or business. We will address the Commission's findings as to each of those factors.

**1. Skills, qualifications, and training required for the job.** The Commission found that it requires "moderate skill" to perform hanging and taping services. The workers typically learned their job by on-the-job training rather than through formal

training. The Commission did not find that hanging and taping sheetrock required such little skill, qualifications, and training that it could not be considered a trade. This factor is neutral because sheetrock hangers and tapers could be either employees or engaged in an independently established trade.

■ 2. **Method of payment, benefits, and tax withholding.** The workers at issue were paid by the square foot, not by the hour. Excell did not provide them with benefits, nor did it withhold taxes from its payments to them. It reported their earnings to the Internal Revenue Service as non-employee compensation. This factor indicates that the workers were engaged in an independently established trade. *Department of Employment v. Bake Young Realty*, 98 Idaho 182, 187, 560 P.2d 504, 509 (1977). The Commission did not mention this factor in its weighing process.

■ 3. **Right to negotiate agreements with other workers.** The workers had the right to negotiate agreements with other workers. The Commission also found that they generally did not do so, apparently discounting its significance. By doing so, the Commission erred. The relevant factor is whether the workers had the right to negotiate agreements with other workers, not the extent to which they found it advantageous or necessary to do so.

4. **Right to choose sales techniques or other business techniques.** The hangers and tapers had the right to choose sales techniques or other business techniques. The Commission found that they "did not typically advertise their services." This finding is contrary to the evidence. It is undisputed that they advertised by word of mouth and some used business cards and signs. The Commission's finding may have been based upon evidence offered by the Department that none of the workers at issue advertised in the yellow pages in telephone directories. The issue is whether the workers had the right to choose sales techniques, not whether the techniques chosen met the Commission's approval. This factor supports the conclusion that the workers were engaged in an independently established trade.

5. **Right to determine hours.** The Commission found, "The workers were not required to set hours." They could work the hours that they wanted and were not required to work at any particular time of day. Although not mentioned by the Commission in its weighing process, this is a strong indication that the workers were engaged in an independently established trade. *Department of Employment v. Bake Young Realty*, 98 Idaho 182, 187–88, 560 P.2d 504, 509–10 (1977).

■ 6. **Existence of outside businesses or occupations.** None of the workers were involved in any businesses or occupations other than sheetrock hanging and taping. In the *Bake Young Realty* case, this Court reversed the Commission's determination that real estate salesmen were not engaged in an independently established occupation. In doing so, we mentioned various facts showing that they were, including, "They were frequently possessed of substantial real estate and other business interests aside from their occupation as licensed real estate salesmen." 98 Idaho at 188, 560 P.2d at 510. In *Vendx Marketing Co., Inc. v. Department of Employment*, 122 Idaho 890, 841 P.2d 420 (1992), we listed various factors that this Court had considered over the years in deciding whether particular workers were engaged in an independent trade or business. The factors listed included the "[e]xistence of outside businesses or occupations," which was based upon the *Bake Young Realty* opinion. 122 Idaho at 896, 841 P.2d at 426. We have repeated that list in subsequent cases, but have never discussed this particular factor. Although the existence of outside businesses was mentioned as a factor in the *Bake Young Realty* case, it is of little or no significance. It is common for employees to have outside businesses that are not connected with their employment. Conversely, it is also common for a person engaged in an independently established trade, occupation, profession, or business not to have a second business. The Commission did not mention this factor in its weighing process.

■ 7. **Special licensing or regulatory requirements for performance of work.** During the period of the audit, there were no

special licensing or regulatory requirements to perform sheetrock hanging and taping. Although the existence of such licensing or regulatory requirements would indicate that sheetrock hanging and taping were independently established trades, *John L. King, P.A. v. State, Dept. of Employment*, 110 Idaho 312, 314, 715 P.2d 982, 984 (1986), the fact that the legislature had not yet required special licensing or imposed regulatory requirements did not indicate that the workers are not involved in an independently established trade. That simply means that the legislature had not chosen to require special licensing or to impose regulatory requirements upon those who engage in that trade. The Commission did not mention this factor in its weighing process.

**8. Whether the work is part of the employer's general business.** The Commission found that the work of hanging and taping sheetrock is a vital part of Excell's construction business. However, it did not mention this factor in the weighing process, possibly because this factor is not significant under these circumstances. Contractors engaged in the construction business often rely upon subcontractors in order to perform their construction contracts.

This factor was first listed in *Vendx Marketing Co., Inc. v. Department of Employment*, 122 Idaho 890, 841 P.2d 420 (1992), as one of the factors this Court had considered over the years in deciding whether particular workers were engaged in an independent trade or business. It comes from *Larsen v. State, Department of Employment*, 106 Idaho 382, 679 P.2d 659 (1984), in which we held that sprinkler pipe movers hired on a seasonal basis to irrigate a farmer's crops were not engaged in an independently established

business. We reasoned that where the pipe movers were hired for the entire irrigation season rather than to complete a particular job and where the end result sought was the irrigation of the crops, the pipe movers were not engaged in an independent business but were simply part of the farmer's irrigation operation. In conjunction with this factor, we also noted that the pipe movers did not own any equipment, and their work did not require particular skill, qualification, or training.[1]

We have not since specifically addressed this factor. There is a significant difference between the workers in this case and the pipe movers in *Larsen*. Here, the sheetrock hangers and tapers are hired to complete specific jobs, for which they are paid upon completion. They were not required to accept any job, they could and did work for other contractors, and they were not required to work continuously for Excell. There was a separate contractual relationship between Excell and the workers for each job, and upon completion of the job that contractual relationship ended.

In addition, businesses often engage subcontractors engaged in independent businesses to perform certain necessary tasks. For example, in *Department of Employment v. Brown Brothers Constr., Inc.*, 100 Idaho 479, 600 P.2d 783 (1979), a corporation engaged in the logging business retained the services of sawyers as part of its logging operations. The work performed by the sawyers was vital to the business, because the corporation could not get the trees to the mill unless the sawyers first cut them down. Nevertheless, we reversed the Commission's determination that the sawyers were not en-

---

1. In *Larsen*, 106 Idaho at 384, 679 P.2d at 661, we reasoned as follows:

   The record declares that moving of sprinkler pipe is not work which demands particular skill, qualification or training; nor does it entail the use of highly specialized or expensive equipment, both strong indicators of an independently established trade, occupation, profession or business. As the fact finder emphasized, the only items of equipment supplied by the workers are gloves, boots, and aprons, more properly items of clothing than equipment. As to the existence of a specified piece of work the accomplishment of which would signal the required payment and the end of the contractual relationship, appellant Larsen's business manager testified that the job sought to be completed, or the end result to be achieved, is the irrigation of the crops. All of the major equipment for the irrigation operation, the sprinkler pipe itself and tractors and trailers needed to move the pipe before the lines are set up or when they are changed or transferred from area to area, is supplied by the employer. The involvement of the pipe movers is only a part of the entire irrigation operation.

gaged in an independently established trade or business. Likewise, in *J.R. Simplot Co. v. State, Department of Employment,* 110 Idaho 762, 718 P.2d 1200 (1986), the work performed by those who loaded potatoes onto the J.R. Simplot Company's trucks was essential for the Company to get the potatoes to its processing plants. Nevertheless, we reversed the Commission's determination that the potato loaders were not engaged in an independently established business.

**9. The nature and extent of the work.** The nature and extent of the work done by the workers at issue is hanging and taping sheetrock. That work can be done either by employees or by persons engaged in their own independently established business. Therefore, this factor would be neutral.

**10. The term and duration of the relationship.** The Commission found, "The term and duration of the relationship between Excell Construction and the workers is open ended." The evidence showed Excell posted the available jobs on a board at its office. The workers either came to the office or called to find out what jobs were available. They selected the jobs they wanted to do, and went to the construction site to do the work. When they were done, they billed Excell, who paid based upon the previously agreed compensation per square foot.

Some of the workers did jobs for Excell only sporadically, while a few did jobs fairly regularly. Of the thirty-one workers listed in the Commission's findings, none performed labor for Excell during each of the nine quarters of the audit period. Fourteen performed labor during only one quarter; four performed labor during two quarters, which were consecutive; seven performed labor during three quarters, with only one doing so during three consecutive quarters; one performed labor during four quarters, which were not consecutive; two performed labor during five quarters, which were not consecutive; two performed labor during seven quarters, one of which was consecutive and one of which was not; and one performed labor during eight quarters, which were not consecutive. Although this factor was not mentioned by the Commission in its weighing process, the workers at issue did not perform labor for Excell with the regularity that would be expected of employees.

**11. The control of the premises.** The work was performed on construction sites that were not controlled by either Excell or the workers. This factor is therefore neutral.

**12. Whether the worker has the authority to hire subordinates.** The Commission found, "The workers had the authority to hire other individuals to assist in performing hanging and taping services, although the workers that were reclassified as employees under the Department's audit rarely hired additional helpers." The relevant factor is whether the workers had the authority to hire subordinates, not whether their actions demonstrated that it was economically advantageous for them to do so.

Authority to hire subordinates is not restricted to hiring employees. It includes subcontracting work to others. The workers' income tax returns that were admitted into evidence showed that several hired subordinates, with the cost paid for such labor during the year ranging from $300 to $52,564.

The fact that the workers had the authority to hire subordinates weighs in favor of the conclusion that they were engaged in an independently established trade. Although we have stated that the authority to hire subordinates is an important factor in the analysis of whether a worker is engaged in an independently established trade, occupation, profession, or business, *Bake Young Realty,* 98 Idaho at 186, 560 P.2d at 508, the Commission did not mention this factor in its weighing process.

**13. Whether the worker owns or leases major items of equipment or incurs substantial unreimbursed expenses.** The Commission found: "The workers own most of their own tools. However, Excell Construction owns the trucks necessary to deliver large amounts of drywall to the jobs." The Commission did not mention this factor in its weighing process, and its cursory finding needs some further explication.

The test is not whether the worker owns major pieces of equipment. *Bake Young Realty,* 98 Idaho at 187, 560 P.2d at 509. A worker is not required to have made substantial investments in equipment in order to be engaged in an independently established trade, occupation, profession, or business. In *Bake Young Realty,* we said that the test is "whether he incurs substantial out-of-pocket professional expenses which are not reimbursed." *Id.* In *Swayne v. Department of Employment,* 93 Idaho 101, 106, 456 P.2d 268, 273 (1969), we said that this test was satisfied where "a person owns all the moveable assets necessary for the operation of a business."

In this case, the undisputed evidence is that the workers owned their own tools, which they valued from $800 to $5,300; their own vehicles which they used to travel to and from the worksites; and materials such as sandpaper and screws used in their work. They were not reimbursed for expenses they incurred in performing their work. The income tax returns in evidence showed that almost all deducted business expenses, which ranged from $1,087 to $24,721. If the cost of labor is added to the business expenses, the highest expenses shown would be $76,269 in one year.

Excell owned a boom truck, a crane truck, and a flatbed truck that it used to deliver sheetrock to the construction sites. The trucks were driven by its employees. It used to rely upon another company to deliver sheetrock to the constructions sites, but it could not always do so when Excell needed it. If the sheetrock was not at the construction site when the sheetrock hangers wanted to start, they would not wait but would simply go to some other job. Therefore, Excell purchased its own trucks. There was no contention that those engaged in the independent business of hanging sheetrock would be expected to deliver the sheetrock by themselves. Certainly, the tapers are not required to do so since the sheetrock has already been hung before they go to work.

**14. Whether either party would be liable to the other party upon peremptory or unilateral termination of the business relationship.** The Commission found, "Nei-ther party would be contractually liable to the other party upon unilateral termination of the business relationship." We explained in *J.R. Simplot Co. v. State, Department of Employment,* 110 Idaho 762, 718 P.2d 1200 (1986), that this factor is of diminishing significance. Under the circumstances of this case, it is not meaningful at all. With respect to this factor, the facts of this case are analogous to *Hammond v. Department of Employment,* 94 Idaho 66, 480 P.2d 912 (1971). There, the owner of trailers used to transport household goods rented them on a trip-by-trip basis to the owners of truck tractors, who pulled them to their destinations. We held that this factor was not meaningful because if the relationship between the parties terminated between trips, no liability would result because no new contract had yet been entered into by the parties. 94 Idaho at 69, 480 P.2d at 915. Likewise, in this case the sheetrock hangers and tapers did not have contracts with Excell to perform all of its sheetrock hanging and taping jobs for any period of time. They orally contracted to perform each job. Should the relationship terminate between jobs, there is no contractual relationship between them, other than Excell's contractual obligation to pay for the work already done.

**15. Other factors which, viewed fairly in light of all the circumstances in a given case, may indicate the existence or lack of an independently established trade, occupation, profession or business.**

**Status as independent contractors.** In *Vendx Marketing Co., Inc. v. Department of Employment,* 122 Idaho 890, 896, 841 P.2d 420, 426 (1992), we stated, "Although covered employment may include independent contractors, the status of a worker as an independent contractor is a factor to be considered." It is undisputed that all of the workers at issue in this case were independent contractors. They elected to work as independent contractors, and they each signed a contract stating that they were entering into a subcontract agreement with Excell. The Commission did not mention this factor in its weighing process.

**Factors mentioned by the Commission in its weighing process.** In that portion of

its decision discussing the relevant factors, the Commission mentioned only three. None of them are included in the above list. We will address them individually.

**a. None of the workers took all of the deductions to which they may have been entitled on their income tax returns.** In its analysis, the Commission stated:

> However, a review of the tax returns for these purported independent contractors indicates that these small independent businesses are business entities in name only. Other than gas and the cost of a cellular telephone, none takes advantage of the allowable deductible business expenses on his tax returns. For example, none of these businessmen take deductions for the tools they buy or the costs of materials, and only one noted a cost in a single year for labor.

This statement by the Commission is simply incorrect. The overwhelming majority of the income tax returns in evidence show substantial deductions beyond just gas and cellular telephones. The deductions taken include depreciation for vehicles and tools and expenses for an office, insurance, renting vehicles or equipment, supplies, travel, labor, repairs and maintenance, and legal fees. The Commission's statement that only one return noted a cost for labor is also incorrect. Eight of the tax returns show deductions for labor ranging from $300 to $52,564.

**b. None of the workers maintained a business bank account that was separate from his or her personal account.** The Commission stated: "None maintains a bank account for his business transactions separate from his personal transactions. However, these characteristics are all indicia of one who is engaged in an established business enterprise." This factor is irrelevant. The workers at issue are sole proprietors of their respective small businesses that are operated out of their homes. Neither logic nor evidence in the record supports the conclusion that they would be expected to open separate business accounts at their banks in order to be considered engaged in their own businesses.

**c. Excell failed to present documentary evidence showing that each worker had sufficient income from sources other than Excell that they could economically survive the termination of their relationship with Excell.** It is uncontradicted that each of the workers at issue worked for companies other than Excell. The Commission determined that a person could not have an independently established business unless he or she obtained income from enough different sources to be able to economically survive the termination of his or her business relationship with any one source. Therefore, it held that Excell was required to produce records showing that each of the workers could have survived economically without the money paid by Excell. It stated:

> More importantly, there is no significant evidence in this record to establish what percentage of any worker's wages during the audit period came from services performed for entities other than Excell Construction. . . . .

> The lack of hard data illustrating the money these individuals earned working for entities other than Excell Construction raises some doubt about the viability of these purported independent business enterprises absent their relationships with Excell. It may be that these workers do perform services for firms other than Employer. However, as one Court [the Colorado Court of Appeals] has pointed out, the purpose of the requirement that a worker be engaged in a business enterprise established independently of the purported employer is to protect the security of those workers who collect substantially all of their earnings from a single employer.

In support of this factor, the Commission pointed to one worker who received 89% of his income from Excell during the year 2000. That worker received income from Excell during eight of the nine quarters of the audit period, the only one to do so. Not surprisingly, he also received more income from Excell ($126,378) during the audit period than any other worker.

In the first appeal of this case, we admonished the Commission to assess each worker individually. We stated:

It should be further noted that employer liability for unpaid unemployment insurance taxes is assessed with reference to each individual worker. *See* I.C. 72–1316. Consequently, when the legally relevant facts apply differently to some workers than to others, the Industrial Commission must reach individualized findings as to each worker, or to each similarly situated group of workers.

*Excell Constr., Inc. v. State, Department of Labor,* 141 Idaho 688, 696, 116 P.3d 18, 26 (2005). The Commission has not pointed to any evidence indicating that the one worker who received 89% of his income from Excell in the year 2000 is similarly situated with the other workers, and he clearly is not. Another worker reclassified as an employee received 9.4% of his income from Excell in 1999, another reclassified worker received 0.8% of his income from Excell in 2000, and another received 1% of his income from Excell during 2001.

Of the thirty-one workers at issue, twenty of them received income from Excell during the year 1999. The amounts they received ranged from a low of $300 to a high of $100,958.[2] Eighteen workers, which included eleven who had received income in 1999, received income from Excell during the year 2000. The amounts they received ranged from a low of $156 to a high of $41,723. Twelve of the thirty-one workers, which included seven who had received income from Excell in 2000, received income from Excell during the first quarter of 2001, with the amounts they received ranging from $200 to $8,513. There is nothing indicating that the worker chosen by the Commission as an example was similarly situated to the other workers.

Looking at it another way, none of the workers received income from Excell during the entire audit period. For example, one worker received income from Excell during the first, second, and fourth quarters of 1999, during the third quarter of 2000, and during the first quarter of 2001. If the Commission's example was representative of all of the workers, then this worker was in business at the beginning of the first quarter of 1999, went out of business by the end of the second quarter of that year, restarted his business in the fourth quarter of 1999 only to go out of business again by the end of that quarter, restarted his business during the second quarter of 2000 only to go out of business at the end of that quarter, and then restarted his business again during the first quarter of 2001.

Given this Court's admonishment in the first appeal, it is obvious that the Commission's reference to the one worker who received 89% of his income from Excell during the year 2000 had nothing to do with its decision-making process. It simply chose him to illustrate the requirement that it decided to impose upon businesses. If they contract with the same independent businessperson so often that they have provided a substantial portion of the businessperson's income for the year, that businessperson will become their employee for the purposes of the employment security law. This new rule that the Commission seeks to adopt is inconsistent with our prior cases.

In *J.R. Simplot Co. v. State, Department of Employment,* 110 Idaho 762, 718 P.2d 1200 (1986), the workers at issue signed yearly contracts with the J.R. Simplot Company to load potatoes onto its trucks for transport to its processing plants. The potato loaders ordinarily worked ten to twelve hour days, five days a week, and sometimes on weekends. They also had to travel to remote locations to load the potatoes, living in trailers or recreational vehicles. Obviously, substantially all, if not all, of their income came from the Simplot Company. Nevertheless, we reversed the Commission and held that under the uncontroverted facts the potato loaders were engaged in an independently established business.

In *Department of Employment v. Brown Brothers Construction, Inc.,* 100 Idaho 479, 600 P.2d 783 (1979), we reversed the Commission's determination that sawyers engaged to cut trees as part of the appellant's

---

**2.** The worker who was paid $100,958 in 1999 is the same one who received 89% of his income from Excell in 2000.

logging operation were not engaged in an independently established trade or business. There was no indication that the sawyers were working for other logging operations during the same time period they were working for the appellant.

■ An independently established business is free to contract with another entity as often as it desires. Whether the independent business will survive the termination of the relationship with the other entity depends upon many factors, including the debt load of the business and market conditions. In order to establish that the workers with whom it contracted are engaged in independently established trades or businesses, Excell was not required to prove that they would continue as viable businesses if Excell ceased doing business with them.

■ On an appeal from the Industrial Commission, this Court exercises free review of the Commission's legal conclusions. *Excell I*, 141 Idaho at 692, 116 P.3d at 22. In this case, the Commission's conclusion from the facts is erroneous. We reverse the determination that the thirty-one workers at issue were engaged in covered employment.

### B.

■ Excell seeks an award of attorney fees on appeal pursuant to Idaho Code § 12–117. It is the prevailing party on this appeal, and is entitled to an award of attorney fees only if the Commission acted without a reasonable basis in fact or law. The relevant facts in this case are virtually indistinguishable from the facts in the *Brown Brothers Construction* case. In that case we reversed the Commission based upon the factors that the sawyers had the authority to hire subordinates; they owned major pieces of equipment consisting of their own trucks, chain saws, files, gasoline, and other equipment; they were paid by the job, not by the hour; and they were free to set their own hours of work. All of these factors exist in this case. The Commission's decision shows that it ignored the applicable factors in order to obtain a desired result. We therefore award Excell reasonable attorney fees on appeal.

### III. CONCLUSION

The decision of the Industrial Commission is reversed, and we award the appellant costs, including a reasonable attorney fee, on appeal.

Justices BURDICK, W. JONES and HORTON concur.

J. JONES, Justice, specially concurring. ·

I concur in the Court's opinion. Even though, at first glance, one might not be inclined to categorize sheetrock hangers and tapers as being engaged in an independently established trade or business, the evidence in the record, fairly viewed, supports this conclusion. The problem in this case, and in at least one other recent case (*Giltner, Inc. v. Idaho Department of Commerce & Labor*, 145 Idaho 415, 179 P.3d 1071 (2008)), is that the Industrial Commission has skewed its analysis of the independently established business prong of I.C. § 72–1316(4)(b) in favor of finding covered employment. That is, it has highlighted some of the many factors that go into making this determination, downplayed others, disregarded some, and even incorporated some factors not included in its regulation (IDAPA 09.01.35.112.04) or in this Court's decisions. The Court has demonstrated in its opinion how this was done in the present case. The Commission acted similarly in the *Giltner* case, although there the Court decided to affirm the Commission on an alternate ground, rather than considering the manner in which the Commission applied its 15–factor test.

While the Commission is subject to criticism for the manner in which it has analyzed and applied the independently established business prong of I.C. § 72–1316(4)(b), previous decisions of this Court have not been particularly helpful in setting out the criteria for determining what constitutes an independently established business. Following the enactment of legislation in 1965, which established the independently established business prong in its present form, the Court established a simple three-factor test in *Swayne v. Dept. of Employment*, 93 Idaho 101, 456 P.2d 268 (1969), but eight years later, in *Dept. of Employment v. Bake Young Realty*, 98 Idaho

182, 560 P.2d 504 (1977), it added a number of additional factors to consider with respect to the independently established business prong, which subsequently proliferated into the 15 factors now applied by the Commission under its regulation. With so many factors to consider, and with guidance from this Court that not all factors need be considered in any particular case, the groundwork was laid for the type of cherry-picking that has recently resulted at the administrative level. It is time for the Court to consider whether the proliferation of factors is warranted by the legislative language or whether a more coherent set of criteria should be established so that the administrative agencies can be better guided in their efforts to determine who is covered under the unemployment security law and who is not. Some historical review of this Court's decisions on the independently established business prong is appropriate.[3]

Prior to the enactment of I.C. § 72–1316(4), the employment security law called for application of the common law test to determine if an individual was an independent contractor, and therefor exempt from coverage. *National Trailer Convoy, Inc. v. Employment Sec. Agency of Idaho,* 83 Idaho 247, 251, 360 P.2d 994, 997 (1961). The Court defined an independent contractor as:

'[O]ne who in rendering services exercises an independent employment or occupation and represents his employer only as to the results of his work and not as to the means whereby it is to be done, and the question whether one is a servant or an independent contractor has been considered in many cases, and various tests have been applied in determining it. It has frequently been stated that it is impossible to lay down any hard and fast rule to determine whether a particular relationship is one of master and servant or contractee and independent contractor, and that each case must be determined on its own facts. Among the factors to be considered are whether the contractor is carrying on an independent business; whether the work is part of the employer's general business;

the nature and extent of the work; the skill required; the term and duration of the relationship; the right to assign the performance of the work to another; the power to terminate the relationship; the control and supervision of the work; the employer's powers and duties with respect to the hiring, firing, and payment of the contractor's servants; the control of the premises; the duty to supply the premises, tools, appliances, material, and labor; and the mode, manner, and terms of payment. Ordinarily no one feature of the relationship is determinative, and all are to be taken into consideration in determining whether or not a person is an independent contractor.'

*National Trailer,* 83 Idaho at 252, 360 P.2d at 997 (quoting 56 C.J.S. Master and Servant § 3(2)). The Court singled out three factors as being indicative of independent contractor status-the right to hire subordinates, ownership of major items of equipment, and whether liability attached upon termination of the relationship. *Id.* at 253, 360 P.2d 998. The Court then went on to attach significance to the mode of payment, stating, "Payment for a result or by the job is an indicia that the relationship is one of contractee and independent contractor, whereas payment for the performance of work indicates a master-servant relationship." *Id.* (quoting 56 C.J.S. Master and Servant, § 3(8)). Of particular interest for purposes of the present case is the first factor—"whether the contractor was carrying on an independent business"—but more about that later.

In 1963, the Legislature amended the employment security law to eliminate the independent contractor test, substituting a provision exempting services performed by an individual "in an independently established trade, business, or profession in which the individual is customarily engaged." 1963 Idaho Sess. Laws, ch. 318, p. 875. Two years later, the Legislature modified the 1963 revision to include the freedom from direction or control prong (which has been somewhat modified since that time) and to word the independently established business

---

**3.** My dissent in *Giltner* (145 Idaho at 421, 179 P.3d at 1077) discusses the early history of this provision and I borrow substantially from it here.

prong as it presently reads. 1965 Idaho Sess. Laws, ch. 214, p. 493.

This Court had an opportunity to consider the independently established business prong in *Swayne*, which involved the question of whether a trailer park lessee was an employee of the trailer park lessors for employment security purposes. The lessee was responsible for managing the trailer park, arranging for maintenance, and collecting rent. Rental income was divided among the lessee, the lessors, and the persons who were selling the trailer park to the lessors. The Court reversed a determination of the Industrial Accident Board[4] that the lessee was an employee of the lessors. With regard to the independently established business prong, the Court referenced the three factors highlighted in *National Trailer*:

> Insofar as the element of whether the lessee was engaged in an independent business is concerned, several factors are important:
>
> (1) Did the lessee have authority to hire subordinates?
>
> (2) Did the lessee own major items of equipment?
>
> (3) Would either party be liable to the other for a peremptory termination of the business relationship?

*Swayne*, 93 Idaho at 105, 456 P.2d at 272 (citations omitted). The Court noted that the first element was satisfied because the lease was for a going business and, "[t]hat in itself gave the lessee the right to hire subordinates in the absence of an agreement to the contrary." The lease also gave the lessee the right and obligation to hire personnel for maintenance and supervision of the business. *Id.* While it was questionable whether the lessee owned major items of equipment, she did own all the equipment necessary for operation of the business. *Id.* at 106, 456 P.2d at 273. The Court noted that the right to terminate the relationship without consequence is the strongest indication that a worker is not an independent businessman. *Id.*

Two years later, the Court decided *Hammond v. Dept. of Employment*, 94 Idaho 66, 480 P.2d 912 (1971), which involved two drivers, both of whom were former employees of Hammond Transfer. An appeals examiner found the drivers were employees of Hammond but the Industrial Accident Board held otherwise. We affirmed the Board's decision. The Court determined that the drivers were free from direction and control in the performance of their work. With regard to the independently established business prong of the test, the Court stated:

> In the case of *Swayne v. Department of Employment*, 93 Idaho 101, 456 P.2d 268 (1969), this court set down three factors to be considered in determining whether a worker is or is not engaged in an independent business. These factors are:
>
> (1) Did the worker have authority to hire subordinates?
>
> (2) Did the worker own major items of equipment?
>
> (3) Would either party be liable to the other for a peremptory termination of the business relationship?
>
> In this case, in addition to being entirely free from any control whatsoever in the performance of their work, [the two drivers] had the authority to hire subordinates to help them load and unload their trailers and exercised this authority frequently. They also owned the major item of equipment used in their hauling—the tractor, and were completely responsible for all expenses on the tractor including insurance, repairs and maintenance. These factors indicated that the drivers were engaged in an independent business and this indication is further strengthened by the fact that the expenses on their equipment constituted a part of their total overhead expense for which they were not reimbursed by Hammond.
>
> Regarding the third factor, whether either party would be liable to the other for a peremptory termination of the business relationship, the record is of no assistance.

*Id.* at 68, 480 P.2d at 914–15. Thus, the Court engrafted a new consideration—that

---

4. Predecessor of the Industrial Commission.

the worker paid his own expenses—onto the second factor.

We then proceed to *Bake Young,* in which the Court reversed an Industrial Commission finding that real estate salesmen operating under the brokerage of Bake Young Realty were employees. With regard to the independently established business prong, the Court, after setting out the three *Swayne* factors, stated:

> Subsequent cases have made it clear that the factors mentioned in *Swayne* were not intended to present the Court's exhaustive analysis, much less to institute a facile checklist for mechanical application:
>
> "... we have never held that the fulfillment of this third factor, or of any one factor, was a prerequisite to a finding that the worker is engaged in an independent business."

*Id.* at 186, 560 P.2d at 508 (quoting *Hammond,* 94 Idaho at 68–69, 480 P.2d at 914). The Court went on to consider and apply the three factors.

It found the first factor was inconclusive since real estate salesman generally do not hire subordinates, as they have no occasion to do so. However, the Court went on to say, "Should they care to do so ... nothing would stand in their way." *Id.* The Court noted the appeals examiner's ruling that real estate salesman do not own major items of equipment but indicated this reading of the *Swayne* requirement was too narrow. According to the Court, "The point is not whether the salesman owns major pieces of tangible equipment for the business, but whether he incurs substantial out-of-pocket professional expenses which are not reimbursed." *Id.* at 187, 560 P.2d at 509. The Court noted that the salesman paid for their own cards, licensing fees, professional dues, and other expenses in dealing with clients, none of which expenses were reimbursed. *Id.* The Court downplayed the right to terminate the relationship without consequence, noting that one can make a stronger case for being an "independent contractor" if one can point to damages that will accrue in case of default upon a formal contractual relationship. *Id.*

The Court went on to say, "No one test standing alone, except the right of control in the relationship of employer and employee, and the lack of such right in that of principal and independent contractor is wholly decisive." *Id.* (quoting *Link's School of Business, Inc. v. Employment Security Agency,* 85 Idaho 519, 523, 380 P.2d 506, 508 (1963)). The Court then noted that additional factors had been considered in *National Trailer,* such as the driver's control of his route, of the garaging and upkeep of his truck, his privilege of refusing a haul, and that payment was for a result or by the job. *Id.* The Court also found significant the fact that the principal did not withhold income or social security taxes and that the putative employer did not direct the hours of work. Considering these factors, all of which were borrowed from independent contractor cases, the Court determined the real estate salesman to be practitioners of an independent occupation. *Id.* Thus, the interpretation of I.C. § 72–1316(4)(b) began to take on the look of the independent contractor test that was eliminated in 1963.

*Larsen v. State, Dept. of Employment,* 106 Idaho 382, 679 P.2d 659 (1984) brought the process full circle. In that case, the Court, in effect, equated the independently established business prong with the independent contractor test. *Larsen,* 106 Idaho at 383–84, 679 P.2d at 660–61. In doing so, the Court relied heavily on *National Trailer.*

*Vendx Marketing Co., Inc. v. Dept. of Employment,* 122 Idaho 890, 841 P.2d 420 (1992) continued this trend. In that case, the Court first mentioned the three *Swayne* factors (downplaying the third factor pertaining to liability for termination of the relationship), and set out seven additional factors, all of which stemmed from *National Trailer.* They are:

1. Skills, qualifications, and training required for the job;
2. Methods of payment, benefits, and tax withholding;
3. Right to negotiate agreements with other workers;
4. Right to chose sales techniques or other business techniques;
5. Right to determine hours;

6. Existence of outside businesses or occupations;

7. Special licensing or regulatory requirements for performance of work.

*Vendx,* 122 Idaho at 896, 841 P.2d at 426. The Court went on to say, "Although covered employment may include independent contractors, the status of a worker as an independent contractor is a factor to be considered."

In *Beale v. State, Dept. of Employment,* 131 Idaho 37, 951 P.2d 1264 (1997), the Court set out 11 factors, over and above the three *Swayne* factors, that could be considered in determining the independently-established business prong. They are:

1. Skills, qualifications, and training required for the job;

2. Method of payment, benefits, and tax withholding;

3. Right to negotiate agreements with other workers;

4. Right to choose sales techniques or other business techniques;

5. Right to determine hours;

6. Existence of outside businesses or occupations;

7. Special licensing or regulatory requirements for performance of work;

8. Whether the work is part of the employer's general business;

9. The nature and extent of the work;

10. The term and duration of the relationship; and

11. The control of the premises.

*Beale,* 131 Idaho at 42, 951 P.2d at 1269.

The Idaho Department of Labor, apparently trying to keep up with the proliferation of factors, decided to take a snapshot of applicable factors following the *Beale* decision. On March 19, 1999, the Department adopted a comprehensive set of regulations pertaining to the employment security law, including a regulation to flesh out the independently established business prong. IDAPA 09.01.35.112.04, which the Commission applied here, provides:

**Proving Worker is Engaged in Independently Established Business.** To meet the requirement of Section 72–1316(4)(b), Idaho Code, it must be proven that a worker is engaged in an independently established trade, occupation, profession or business. The following factors shall be considered in this determination:

a. Skills, qualifications, and training required for the job;

b. Method of payment, benefits, and tax withholding;

c. Right to negotiate agreements with other workers;

d. Right to choose sales techniques or other business techniques;

e. Right to determine hours;

f. Existence of outside businesses or occupations;

g. Special licensing or regulatory requirements for performance of work;

h. Whether the work is part of the employer's general business;

i. The nature and extent of the work;

j. The term and duration of the relationship

k. The control of the premises;

l. Whether the worker has the authority to hire subordinates;

m. Whether the worker owns or leases major items of equipment or incurs substantial unreimbursed expenses, provided, that in a case where a worker leases major items of equipment from the alleged employer;

   i. The terms of the lease; and

   ii. The actions of the parties pursuant to those terms must be commercially reasonable as measured by applicable industry standards.

n. Whether either party would be liable to the other party upon peremptory or unilateral termination of the business relationship; and

o. Other factors which, viewed fairly in light of all the circumstances in a given case, may indicate the existence or lack of an independently established trade occupation, professional or business.

It might be observed that the Department did a little bit of embellishment in factors "m" and "o".

With this proliferation of factors, and the lack of any guidance from this Court as to how each is to be weighted and whether or not each is applicable in every case, it is no wonder that the Commission has produced some recent results of troublesome nature. Further, after the Legislature eliminated the independent contractor test, this Court has reestablished it through the independently established business prong. Had the Legislature wished this to be case, it could simply have so stated. Of particular interest is the fact that, over the years, the first factor noted in *National Trailer*—"whether the contractor is carrying on an independent business"—which was only one of a number of factors to be considered in determining whether a person was an independent contractor, has now morphed into the independent contractor test. That is, the single factor in *National Trailer* has now swallowed the independent contractor test and become not just one but, 15 factors. Given this history, one could understand if the Commission were somewhat befuddled in determining whether a person is engaged in an independently established business. The Court should clear up the matter by developing a common sense test that can be consistently applied.